# Court of Appeals.

### November, 1903.

## THE PEOPLE EX. REL. MARY CLARK v. THE KEEPER OF THE NEW YORK ST. REF. FOR WOMEN, ETC.

### (1 76 N. Y. 465.)

JURISDICTION OF NEW YORK CITY MAGISTRATE TO SENTENCE WOMEN TO STATE REFORMATORY UNDER STATE CHARITIES LAW. —L 1896. CH. 546 AS AMD. L. 1899 CH. 632.

A magistrate of the city of New York has no jurisdiction to se·· - tence a woman to the State Reformatory at Bedford under sec. 146 of the State Charities Law, unless she is convicted of one or more of the offenses enumerated therein; and a conviction thereunder is improper where it is impossible to determine, from the records and papers relating to the conviction and sentence returned upon writs of habeas corpus and certiorari allowed in her behalf, whether she was convicted of being a prostitute, either "public" or "common" assuming these terms to be practically synonymous, or on the charge of "disorderly conduct" but, assuming that it is reasonably certain that the magistrate intended to convict the relator of "disorderly conduct" then the conviction is not a valid conviction for a misdemeanor and, therefore, within the purview of the State Charities Law, unless the offense complained of constitutes a misdemeanor as defined by law; and where the record fails to show that the disorderly conduct complained of comes within the meaning of section 1458 of the Consolidated Act, which seems to have been incorporated into the Greater New York Charter, or that of section 675 of the Penal Code relating to the offense of "disorderly conduct" as there-

in defined, and, therefore is a misdemeanor, the relator is properly discharged from custody.    (Affirming 80 App. Div. 448.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 6, 1903, which affirmed an order of Special Term sustaining writs of habeas corpus and certiorari and discharging the relator from custody.

·The facts, so far as material, are stated in the opinion.

William Travers Jerome, District Attorney (Robert C. Taylor and Henry G. Gray of counsel), and John Cunneen, Attorney-General, for appellants.    The commitment was authorized by section 146 of the State Charities Law.    (L. 1896, ch. 546; L. 1899, ch. 632: People ex rel. v. Coon, 67 Hun, 523; 51 N. Y. S. R. 339; People v. Cowie, 88 Hun, 498; People ex rel. v. Superintendent, etc., 33 Misc. Rep. 245.)    The city magistrate had jurisdiction in this proceeding.    (People ex rel. v. Coon, 67 Hun, 523; People v. Cowie, 88 Hun, 498; Matter of Hellman, 174 N. Y. 254; People v. Adelphi Club, 149 N. Y. 5; U. S. v. Graham, 110 U. S. 219; U. S. v. Finnell, 185 U. S. 236; People ex rel. v. N. Y. Cath. Protectory, 101 N. Y. 195; People ex rel. v. P. E. House of Mercy, 128 N. Y. 180; People ex rel. v. P. E. House of Mercy, 133 N. Y. 207; Matter of Knowack, 158 N. Y. 487.)

Amos H. Evans for respondent.    If the relator was convicted of disorderly conduct the judgment of conviction was void, because of the magistrate being without jurisdiction, there being no such offense known to the law of the state of New York.    (L. 1882, ch. 410, § 1458; Penal Code, § 675; People ex rel. v. Reformatory, 38 Misc. Rep. 233; L. 1895, ch. 601, § 14; L. 1901, ch. 466, § 1409.)    The committing

magistrate had no power to commit the relator to the state reformatory for the period of three years.    (People ex rel. v. Reformatory, 38 Misc. Rep. 233; L. 1896, ch. 546, § 146; L. 1899, ch. 632.)


WERNER, J.

On the 31st day of May, 1902, the relator was sentenced by a New York city magistrate to the State Reformatory at Bedford, N. Y., under the authority of section 146 of the State Charities Law (Chap. 26, Gen. Laws), which provides, in substance, that a female between the ages of fifteen and thirty years, who has been convicted by a magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor, and who is not insane nor mentally or physically incapable of being benefited by disciplinary treatment, may be sentenced to the several reformatory institutions for women therein mentioned.

The learned district attorney has favored us with a most elaborate and instructive brief on the constitutionality of the section of the State Charities Law above referred to, but as that question is not distinctly raised by the respondent's counsel, and as there are other obvious infirmities in the record which require the affirmance of the order discharging the relator, we shall not now discuss or decide the constitutional question, for that may be of sufficient gravity and importance to merit the most serious consideration when presented by a record that is not so fatally defective as the one before us.

The complaint made by the officer who arrested the relator charges her with importuning and soliciting men for the purpose of prostitution, and with having been repeatedly arrested and convicted of the charge of disorderly conduct, in that she was in the habit of soliciting and importuning men for the purpose of prostitution upon the street at all hours of the

night, and with being "a public prostitute."

The record of conviction recites that the relator was brought before the magistrate and charged with "disorderly conduct" in importuning and soliciting men upon the street for the purpose of prostitution.

The warrant of commitment states that the relator was charged with "being a public prostitute," and that she was convicted upon that charge.

· The magistrate's return to the writs of habeas corpus and certiorari issued herein sets forth that the relator was convicted of "such disorderly conduct charged in said complaint, and as in my opinion tended to and might provoke a breach of the public peace."

The relator demurred to this return, and, upon the issue thus joined, the Supreme Court at Special Term sustained the demurrer and the writs and discharged the relator from custody. At the Appellate Division this order was affirmed. There are several reasons why this decision should be sustained.

To begin with, the magistrate had no jurisdiction to sentence the relator to the reformatory at Bedford, because she was not convicted of any of the offenses enumerated in the statute which confers upon magistrates the power to sentence convicted women to that institution. The relator was not convicted of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, and those are the only offenses specified by name in section 146 of the State Charities Law. It is urged that the terms "public prostitute" and "common prostitute" are practically synonymous, so that a conviction under either designation amounts to one and the same thing, but even if that be conceded for the purposes of the argument, there still remains the practical difficulty of determining whether the relator was convicted of being a prostitute or for disorderly conduct. In the complaint the substance of the charge is

that the relator was a "public prostitute," and her previous arrests and convictions for disorderly conduct are recited apparently as matter aggravating the charge.    In the record of conviction the offense named is " disorderly conduct," and the reference to the soliciting of men for immoral purposes seems to be purely explanatory and incidental.    The only offense referred to in the warrant of commitment is that of being a "public prostitute," but the magistrate's return to the writs ignores that charge and asseverates that the relator's conviction was had on the charge of "disorderly conduct."  So palpable and confusing are these contradictions of the magistrate's record that it is impossible to say that any offense has been charged and set forth with the convenient certainty which the law requires.    While it is not necessary that the offense should be charged with the precision required in an indictment, the record should show that the relator is charged with some offense known to the law by some statutory or legal definition (People ex rel. Allen v. Hagan, 170 N. Y. 52), and this is particularly true in cases where an alleged offender may, by a single act, lay himself liable to either one of several charges.

We have referred to the offenses mentioned by name in section 146 of the State Charities Law, upon conviction of either of which a woman of the prescribed age and condition may be sentenced to a state reformatory.    To this category should be added the general designation of " misdemeanor" which appears at the end of the enumeration.    We mention this because it is argued for the appellant that if there is no such offense as that of being " a public prostitute" the conviction herein should be upheld on the ground that "disorderly conduct" is a misdemeanor which brings the relator within the class of women who may be committed to state reformatories. Upon this point it is enough to say that, even if it were reasonably certain that the magistrate intended to convict the relator of " disorderly conduct," it would not necessarily follow that

the conviction would be valid, for the case would then turn upon the question whether the charge of "disorderly conduct," as recited in the complaint, record of conviction and warrant of commitment, is one which, under other statutes, is defined as an offense or a misdemeanor. In the abstract there is no such offense as "disorderly conduct," but by section 1458 of the Consolidation Act, which seems to have been incorporated into the charter of the Greater New York city, "every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say : (2) Every common prostitute or night walker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers by," and by section 675 of the Penal Code "any person who shall, by any offensive or disorderly act or language, annoy or interfere with any person or persons in any place * * * shall be deemed guilty of a misdemeanor."

The most cursory comparison of the language of these statutes, with the verbiage of the magistrate's record herein, will disclose the essential insufficiency of the latter in the very particulars which go to make up the statutory offense of disorderly conduct. Taken as a whole, this record gave the magistrate no jurisdiction to render the judgment which is here the subject of inquiry. The writs of habeas corpus and certiorari were, therefore, the proper remedy (People ex rel. Tweed v. Liscomb, 60 N. Y. 559; People ex rel. Van Riper v. N. Y. C. Protectory, 106 N. Y. 605), and we think the case has been correctly disposed of by the courts below. We quite agree with the learned district attorney that there is no more important branch of our criminal jurisprudence than that which relates to the reformatory treatment of offenders who are not to be classed as criminals ; but since the jurisdiction to administer such treatment is purely statutory, it is

equally clear that in its exercise the forms of law should be observed, at least with reasonable approximation, for otherwise the rights of such offenders would be subject to invasions that will not be tolerated even in dealing with hardened criminals.

The errors of record in this case are not mere matters of form but go to the very substance of right and, therefore, the order herein must be affirmed.

GRAY, J. (dissenting).    Upon the appeal to this court, the relator, as respondent, in the first place insists that the returns to the writs show upon their face that " the proceedings before the committing magistrate were conducted in such a loose, careless and indefinite manner that it is impossible to determine the nature of the charge against her," or the basis of the magistrate's decision.    In the second place, she says there is "no offense known to the law of the state as that of public prostitute."    And, further, she insists that the magistrate was without jurisdiction; that he had no power to commit her for the period of three years and that the proceedings before him were void, because of the failure to keep a written record of the evidence upon which the judgment was based.    Such was, also, her demurrer to the returns to the writs, in substance.

The return of the magistrate is open to the charge that he was slovenly in his records and careless in his proceedings ; but, in my opinion, the proceedings exhibited in the return to the writs were not fatally affected thereby and they disclose a case of the valid exercise of jurisdiction over the person of the relator.    If it was made to appear to the Supreme Court, upon the return to the writ, that the relator was held under a valid commitment, it had the force of a final judgment of a competent tribunal and it was the duty of the court to remand her.    (Code of Civil Procedure, sec. 2032; People ex rel. Kuhn v. P. E. House of Mercy, 133 N. Y. 207.)    The proceeding, upon the return to a writ of habeas corpus, is in-

stituted to determine whether a person, detained in custody, was so detained under legal authority, and is not for the purpose of reviewing the determination of the subordinate tribunal. (People ex rel. Danziger v. P. E. House of Mercy, 128 N. Y. 180.) Section 146 of the State Charities Law, (Laws of 1896, chap. 546, as amended by chap. 632, Laws of 1899), provides that "A female, between the ages of fifteen and thirty years, convicted by any magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor, and who is not insane, nor mentally or physically incapable of being substantially benefited by the discipline of either of such institutions, may be sentenced and committed to * * * the New York State Reformatory for Women, at Bedford;" the term of the commitment being for a period of three years, or until discharged by the board of managers. The complaint, upon which the relator was arrested and brought before the magistrate, charged her with being "a public prostitute," who was soliciting men for the purposes of prostitution, at a certain time and place, and who had been repeatedly arrested and convicted of the charge of disorderly conduct in committing such acts upon the streets. The complaint charged the offense defined by the statute and gave jurisdiction, if it existed. The examination of the relator exhibits her confession of being guilty of the charge which had been made against her. The warrant of commitment of the magistrate recited the charge made; the proceedings had before him upon her arrest and trial; the conviction upon the charge; that she was "not insane, nor mentally or physically incapable of being substantially benefited by the discipline" of the New York State Reformatory for Women at Bedford, and that she was committed to that institution "for the term of three years, unless sooner discharged therefrom by the managers."

I think that there was sufficient before the court, upon the

returns to the writs, to demonstrate the jurisdiction of the magistrate over the person of the relator and the subject-matter of the complaint, and that the commitment, in substance and form, was correct and sufficient to show such jurisdiction and the legality of the proceedings. (People ex rel. Danziger v. P. E. House of Mercy, supra.) The loose statements of the magistrate, that the conviction of the relator was for disorderly conduct, cannot alter the facts, nor affect the validity of the relator's commitment; unless the charge of being "a public prostitute" constitutes no offense under the law ; or unless the committing magistrate was without power to try and to commit the relator. No other question is raised by the relator, upon this appeal, and no other question is to be considered. However advisable and right that, in such cases, the committing magistrate should reduce and preserve all of the evidence, in writing, (People v. Giles, 152 N. Y. 136) under the present circumstances, it is not material error; inasmuch as the evidence given by the relator herself is returned, showing that she confessed to being guilty of the charge made in the complaint. The affidavit, upon which the writs issued, contains no allegation that the judgment was unsupported by evidence and the demurrer does not raise such a question ; nor were the material facts, appearing in the return, controverted. The questions, solely raised and to be considered in this case, are, first, whether the omission to state, in the complaint and commitment, in the words of the statute, that the relator was "a common prostitute" was fatal to the validity of the warrant, and, second, whether an offense was charged upon which the committing magistrate had power to try and to commit.

As to the first question, I entertain no doubt but that the words, "a public prostitute," are the legal equivalents of "a common prostitute." The word "public," in its common acceptation and use, has all the significance of, and is synonymous with, "common." A woman, who prostitutes her

person to the public use, prostitutes it to the common use. While the precise language of a penal statute should be employed, it is not, necessarily, substantial error when other words happen to be used, which have the same accepted and popular sense as those used in the statute. No different meaning can be imported into the term "public prostitute" than attaches to that of "common prostitute."

Was there an offense charged and did the committing magistrate have the power to commit, upon proof thereof? I think that to be "a common prostitute" was made a new offense by this statute. It created a new offense, because it provided that, upon conviction of the female for committing the act specified, she might be deprived of her liberty and might be detained in the custody of one of certain state institutions for a period of three years ; the sentence being indeterminate, in the sense that she might be sooner discharged by the board of managers. Prior thereto, under section 887 of the Code of Criminal Procedure, a common prostitute was classified with vagrants. In this statute the legislature has exercised its wide police powers, undoubtedly, with the intent of promoting the public health and morals, and this State Charities Law is a scheme for the correction of an evil ; whose further aim is the reformation of the offender. It was competent, to that end, to make it an offense to be a public, or common, prostitute and to provide that, where a female was convicted thereof, she should be punished, not in a strictly penal sense, but through a restraint of her person, by being delivered into the custody of one of the reformatory institutions of the state, if she appeared to be morally and physically capable of being benefited by discipline, for a reasonable period of time. The operation of the act was, clearly, not intended to be so much punitive, as preventive in its aims. The offender was to be withdrawn from the community and confined where she would, not only, be unable to continue her vile conduct to the detriment of the public morals and, possibly, of the public health;

but where she might be, herself, reformed and made a fit member of society. The proceeding for her commitment, upon conviction of the offense, was not criminal in its nature; it was preventive and reformatory in the interests of organized society. It is plain to my mind that, in the enactment of these provisions of the State Charities Law, the legislature has made that an offense against the law, which was not such before, and that it has conferred upon "any magistrate," which includes, of course, a city magistrate, jurisdiction to convict a female, charged with the offense, and, in a proper case, having regard to her mental and physical conditions, to commit her to one of the institutions mentioned, for the prescribed period of three years, or until discharged by the board of managers. The earlier acts, of which this general law is a codification and extension, expressly authorized "all justices of the peace, police justices and other magistrates and courts" to sentence and commit (Ch. 187, Laws of 1881; ch. 233, Laws of 1890).

For these reasons I dissent and I think there should be a reversal of the orders below.

PARKER, CH. J., HAIGHT, VANN and CULLEN, JJ., concur with WERNER, J.; GRAY, J., reads dissenting opinion; MARTIN, J., absent.

Order affirmed.