OPINION OF THE COURT
Herbert A. Posner, J.
When is a “John” not a “John” — that is the question!
In both of these separate proceedings (consolidated for purposes of decision) the defendants move to dismiss the complaint for failure of the People to allege facts that constitute a violation of section 230.03 of the Penal Law (patronizing a prostitute). In defendant Reid’s case, on March 21, 1980 and in defendant Bailey’s case, on June 12, 1980, *775 each defendant is accused of soliciting the same decoy policewoman to engage in an unlawful sexual act in exchange for United States currency. For the purposes of this motion neither the nature of the sexual act nor the amount of the currency is relevant.
HISTORICAL BACKGROUND
If it be true that prostitution is the “oldest profession”, then patronizing a prostitute must be the “oldest avocation.” Proscription of prostitution dates back thousands of years and is specifically forbidden in Deuteronomy, chapter 23, verse 18.[1] Nevertheless, prostitution has flourished for centuries in many varied societies and cultures. It is the institutiokalized marketplace for the sale of sex, and though the marketplace of today differs from that of the past (e.g., massage parlors, streetwalkers), and the Western (Europe and America) marketplace is different from that in Japan or Nigeria, the sex marketplace has shown a remarkable persistence in different times and cultures.[2] The forms of proscription have varied from country to country and from time to time within a country — proscription by reglementation[3] and criminal penalty.[4] Under the common law prostitution was not an indictable offense nor was it punishable in common-law tribunals.[5]
While prostitution itself was not regarded as an offense in either English or American common law, prostitution *776 came into conflict with the law when it was associated with street soliciting or the boisterous operation of a bawdy-house so as to be annoying to passersby. Thus, a prostitute was guilty of disorderly conduct for the “annoyance” created, not for the act of prostitution itself. An early New York statute (L 1860, ch 508) defined as a disorderly person “[e] very common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation to the annoyance of the inhabitants or passers-by” (emphasis added).
In addition to the disorderly conduct statute, a vagrancy statute was enacted in the late nineteenth century.[6] In 1915 the statute was amended to revise and extend the definition of a vagrant to include: “A person (a) who offers to commit prostitution; or (b) who offers to secure a female person for the purpose of prostitution, or for any other lewd or indecent act; or (c) who loiters in or near any thoroughfare or public or private place for the purpose of inducing, enticing or procuring another to commit lewdness, fornication, unlawful sexual intercourse or any other indecent act; or (d) who in any manner induces, entices or procures a person who is in any thoroughfare or public or private place to commit any such acts [is a vagrant] ”.
From the above language it was apparent that the legal proscription was directed at the prostitute and the pimp. It was not until 1919 that the Legislature finally added language that could apply to the patron. Subdivision 4 of section 887 of the Code of Criminal Procedure was amended by adding paragraphs (e) and (f) to the foregoing provisions. Paragraph (f) stated: “or (f) who in any way, aids or abets or participates in the doing of any of the acts or things enumerated in subdivision four of section eight hundred and eighty-seven of the code of criminal procedure” (emphasis added).
While the wording of the 1919 amendment to subdivision 4 of section 887 did not exclude the male customer, male Judges refused to interpret the statute as applying to a male customer. The prevailing philosophy at that time (and for centuries prior thereto) was that prostitution does not *777 consist of a single act of unlawful sexual intercourse and it is only the practice of women. Therefore, a man participating in the act of sexual intercourse with a prostitute cannot be held as a principal.[7] To correct this form of sex discrimination an amendment was proposed to subdivision 4 of section 887, by introducing a new paragraph defining a vagrant as one: “(h) who pays or offers or agrees to pay any money to another person as compensation for an act of sexual intercourse or other lewd or indecent act” (Committee of Fourteen, Ann Rep for 1924, p 33; emphasis added).
The purpose of the amendment as stated by its supporters was (2) “to reduce further the amount of commercialized prostitution by creating a definite deterrent to those who would be customers of prostitutes”, and to remove (3) “a discrimination which now exists against women, by adding words to the present law which cannot be construed as limited to persons of one sex and by striking out words which have been so limited in their definition.” (1924 Rep, p 35.)
Unfortunately, the 1924 proposed amendment was 40 years ahead of its time. It was not until 1965, when the Legislature revised the entire Penal Law, that a law was passed specifically aimed at the patron or “John” as he is euphemistically called.[8]
THE STATUTE
Section 230.02 of the Penal Law — “Patronizing a prostitute; definitions” reads as follows:
“1. A person patronizes a prostitute when:
“(a) Pursuant to a prior understanding, he pays a fee to another person as compensation for such person or a third person having engaged in sexual conduct with him; or
“(b) He pays or agrees to pay a fee to another person pursuant to an understanding that in return therefor such person or a third person will engage in sexual conduct with him; or
“(c) He solicits or requests another person to engage in sexual conduct with him in return for a fee.
*778 “2. As used in this article, ‘person who is patronized’ means the person with whom the defendant engaged in sexual conduct or was to have engaged in sexual conduct pursuant to the understanding, or the person who was solicited or requested by the defendant to engage in sexual conduct” (emphasis added).
QUESTION OF LAW
From the language of the statute the question of law raised is whether the words “another person” refer only to a prostitute or whether they refer to anybody, including a decoy policewoman, as in this case.
INTERPRETATION OF LEGISLATIVE INTENT
A. Defense Interpretation — It is the defendant’s contention that section 230.03 of the Penal Law deals only with one who patronizes a person who is engaged in the profession of prostitution and in effect both parties are equal partners in commercial sex. The definitions contained in section 230.02 contain three elements involving (a) past actions (“Pursuant to a prior understanding, he pays a fee to another person as compensation for such person or a third person having engaged in sexual conduct with him”); (b) present actions (“He pays or agrees to pay a fee to another person pursuant to an understanding that in return therefor such person or a third person will engage in sexual conduct with him”); or (c) future actions (“He solicits or requests another person to engage in sexual conduct with him in return for a fee”).
Defendant argues that the “other person” in (a) and (b) can only apply to a true “prostitute” because a decoy policewoman is under a legal disability[9] from fulfilling the requirements expected of “another person.” Therefore, pursuant to the legal principle of ejusdem generis[10] the use of the exact same words (“another person”) in paragraph (c) *779 dictates a similar construction — so that, the other person in paragraph (c) must also be a true prostitute.
B. Prosecutorial Interpretation — In a well-written memorandum of law the District Attorney contends that (1) the statute on its face permits prosecution, (2) the decisional law[11] upholds prosecution as a practical application of legislative intent, and (3) the legal principle of no defense for mistakes of fact supports the prosecution.
The District Attorney contends that under paragraph (c), it is the conduct of the defendant which constitutes the crime, not the condition of the person solicited. The words “another person” are interpreted to mean “any other person.” This theory is heavily reinforced by the one published decision on the subject. In 1973, Judge Joseph Stone of Criminal Court, New York County, wrote a decision [12] involving the same fact pattern, in which he concluded the words “another person” could apply to a decoy policewoman. In the pertinent portion of his decision he wrote: “While entitled ‘patronizing a prostitute/ the body of the section clearly states that the conduct intended to be proscribed is conduct directed ‘to another person.’ It is well established that the character of a statute is to be determined by its provisions and not by its title (People v. McCann, 16 N. Y. 58; People v. O’Brien, 111 N. Y. 1, 59). Thus it is the language of the body of the statute, and not its ‘headnote’, which sets forth the scope of the conduct which is to be proscribed. The statute here is aimed at a person who seeks out sexual activity for a fee with any ‘other person.’ This ‘other person’ is not required to be of any particular class of individual nor even of the opposite sex (Penal Law, § 230.10), for it is the conduct of the solicitor, and not the solicited, which is proscribed.” (People v Bronski, 76 Misc 2d 341, 342.)
Judge Stone, a former chief assistant in District Attorney Hogan’s office, supports his interpretation of legislative intent with a comment made by the staff of the Commission on the Revision of the Penal Law. He writes as follows (supra, pp 342-343):
*780 “This view of the statute is supported by the Commission on the Revision of the Penal Law staff comments which state in part: ‘This section makes it a violation for a person to hire or attempt to hire a prostitute or anyone else to engage in sexual conduct with him’. (Gilbert, Criminal Law and Procedure, p. 2-372; (emphasis supplied.) By condemning mere solicitation on the part of a patron, the Legislature has sought to eradicate an age-old problem by attacking its cause — the demand. This is the exact purpose of the statute. Otherwise the patron would be permitted to proceed on his way uncondemned by the law, until he finally finds a person willing to satisfy him.”
“I therefore find that section 230.05[13] of the Penal Law is violated when one person solicits another person to engage in sexual conduct with him in return for a fee, and it is immaterial whether the person solicited is or is not a prostitute.”.
An analysis of the commission staff’s comment is necessary:
COMMISSION STAFF COMMENTS ON CHANGES IN THE NEW PENAL LAW SINCE THE 1964 STUDY BILL
“The New Penal Law enacted at the 1965 legislative session differs in a number of respects from the study bill submitted at the 1964 session. There are some important changes of substance, many minor changes of substance, some structural changes and literally hundreds of purely phraseological changes made for purposes of clarity and conformity. The ensuing comments do not, in the main, explain alterations of mere form and language but are largely addressed to changes of substance * * *
“Article 230 (Formerly Art. 235): PROSTITUTION OFFENSES
“The most important change in this article is the addition of a new offense: ‘Patronizing a prostitute.’ * * *
“In substance, this section makes it a violation for a person to hire or attempt to hire a prostitute or anyone else to engage in sexual conduct with him.
*781 “Though not presently an offense in New York, such ‘patronizing’ conduct is proscribed in various forms by the penal codes of several other jurisdictions, including the recently revised codes of Illinois and Wisconsin and it is included as an offense in the American Law Institute’s Model Penal Code (§ 251.1 [5]).
“At the public hearings held by the Commission with respect to the proposed Penal Law, and in conferences and correspondence with the Commission and its staff, a number of persons and organizations have strongly urged the inclusion of a ‘patronizing’ offense. The reasons most vigorously advanced are: (1) that criminal sanctions against the patron as well as the prostitute should aid in the curtailment of prostitution; and (2) that to penalize the prostitute and exempt the equally culpable patron is inherently unjust.
“After consideration of these contentions, the Commission decided to include the indicated patronizing offense in the new bill (N § 230.05) as a proper corollary to ‘prostitution’ (N§ 230.00).
“Following these two sections, it may be observed, a ‘no defense’ provision has been added (N § 230.10): this makes it perfectly clear that both the ‘prostitution’ and the ‘patronizing’ offenses apply not only to the usual situation where a female is hired by a male, but also to those where a male is hired by a male, a female by a female, and a male by a female.”
LEGISLATIVE INTENT
Generally, penal statutes are to be strictly construed against the State and in favor of the accused.[14] However, since 1881[15] there has been a statute to the contrary. Section 5.00 of the Penal Law states: “The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law.”
Notwithstanding the statutory rule for the construction of penal laws, if a statute makes penal the doing of some *782 thing not previously unlawful, the language of the statute should be given a reasonable construction to carry into effect the purpose of the Legislature, but it cannot be enlarged, so as to make penal what is not plainly written in the statute itself.[16]
If in drafting section 230.02 (subd 1, par [c]), the draftsman had written “(c) He solicits or requests any person to engage in sexual conduct with him in return for a fee”, the principal of ejusdem generis would not apply and the clear import of the words would circumscribe a non-prostitute as well as a prostitute. Therefore, where a statute is ambiguous, resort may be had to reports of committees or commissions concerned with the legislation as an aid to construction.[17] This is precisely what Judge Stone did in Bronski (76 Misc 2d 341, supra). It is logical to assume that commission reports or notes issued prior to the passage of legislation were available to all legislators; and, therefore, are persuasive indicia of legislative intent. Conversely, commission reports or notes issued after the statute has passed carry little weight (if any); because the members of the Legislature cannot be held to contemplate that which is ex post facto. The commission staff notes, upon which Judge Stone and the District Attorney rely, were written after the 1965 Penal Law was enacted. Therefore, when the staff comment (see above) states: “a prostitute or anyone else”, the comment “or anyone else” bears little weight as to legislative intent; because the members of the Legislature were not aware that the words “another person” meant “a prostitute or anyone else.”
The staff comment also informs us that the statute, “Though not presently an offense in New York, such ‘patronizing’ conduct is proscribed in various forms by the penal codes of several other jurisdictions, including the recently revised codes of Illinois and Wisconsin and it is included as an offense in the American Law Institute’s Model Penal Code (§ 251.1 [5]).”
Since the Model Penal Code and the revised codes of Illinois and Wisconsin were available to all legislators prior to *783 the enactment of the 1965 statute, then, an analysis of them might shed some light on the intent of the New York statute. The Model Penal Code (§ 251.2, subd [5]) states:
“(5) Patronizing Prostitutes. A person commits a violation if he hires a prostitute to engage in sexual activity with him, or if he enters or remains in a house of prostitution for the purpose of engaging in sexual activity.”
Section 11-18 of the Illinois Criminal Code of 1961 defines patronizing a prostitute as follows:
“§11-18. Patronizing a Prostitute
“ (a) Any person who performs any of the following acts with a person not his or her spouse commits the offense of patronizing a prostitute:
“(1) Engages in an act of sexual intercourse or deviate sexual conduct with a prostitute; or
“(2) Enters or remains in a place of prostitution with intent to engage in an act of sexual intercourse or deviate sexual conduct.”
Section 944.31 of the Wisconsin Criminal Code has the following simple one sentence language:
“Any person who enters or remains in any place of prostitution with intent to have nonmarital sexual intercourse with a prostitute or to commit an act of sexual perversion, masturbation or sexual contact with a prostitute is guilty of a class A misdemeanor.”
If the intent was to follow the Model Code, the Illinois statute and/or the Wisconsin statute, then one must come to an inescapable conclusion that the category known as the “person patronized” was not intended to include anyone but a professional prostitute. However, the New York statute does incorporate an additional element not included in either the Model Code, Illinois or Wisconsin statutes. Section 230.02 (subd 1, par [c]) of the Penal Law refers to the act of “soliciting”: “He solicits or requests another person to engage in sexual conduct with him in return for a fee.” Though the heading of section 230.02 is “Patronizing a prostitute” and paragraphs (a) and (b) of subdivision 1 refer (by the intent of their language) to a prostitute, it would still be possible in paragraph (c) of subdivision 1 to incorporate a criminal element in which the party patron *784 ized did not have to be a prostitute. It is well established that the character of a statute is to be determined by its provisions and not by its title alone (People v McCann, 16 NY 58; People v O’Brien, 111 NY 1, 59). However, if the lan-. guage in paragraph (c) of subdivision 1 was intended to apply to a “prostitute or anyone else” as the commission staff note contends, then, it should have been written that way or by use of the words “any person” instead of “another person”.
The doctrine of ejusdem generis is used in ascertaining legislative intent when the language used is not clear, as in this case. The rule is particularly applicable when the term “other”, as in “another person”, is used.[18] The use of the expression “any other”, as in “any other person”, will give the clause a broader application than if simply the word “other” had been employed.[19]
If the New York State Legislature wanted to make a single act of solicitation (regardless of whom solicited) a crime, then there should be a separate crime for soliciting. For example, the State of Ohio (Grim Code, § 2907.24 [soliciting]) states:
“ (A) No person shall solicit another to engage with such other person in sexual activity for hire.
“(B) Whoever violates this section is guilty of soliciting, a misdemeanor of the third degree.”
The language in the Ohio statute is plain, simple, gender-neutral and it applies equally to the patron and the prostitute. The only issue is which of the two parties solicited or initiated the relationship.
The States basically following the language of the Model Penal Code (in addition to Illinois and Wisconsin) are Colorado, Idaho, Kansas, Nevada, New Jersey, New Mexico and Pennsylvania. The States which have adopted all or part of the language in the New York statute are Arkansas, Connecticut, Delaware, Indiana and Missouri.[20] Utah hedges by *785 employing language that is partially from the Model Penal Code and partially from New York’s statute. Michigan is the only State to follow the example set by Ohio. The Michigan statute is titled “Soliciting and accosting”.[21]
Hence, of the 50 States, we find 9 States employing language that clearly excludes everyone but the professional prostitute; 5 States using all or part of the New York language (“another person”); 1 State hedging its language; and 2 States employing language that is broad enough to include anyone (including a decoy policeman or policewoman) — doing so (not under a “Patronizing a prostitute” heading) but, under a “solicitation” or “accosting” title. Thus, New York and 17 other States treat the “John” equally with the prostitute; and 32 States still follow a double standard.
CONCLUSION
It is the opinion of this court that the Legislature intended section 230.03 of the Penal Law “Patronizing a prostitute” to mean just that — any extension of the language (employed in section 230.02 “Definitions”) to include nonprostitutes is unwarranted by either the principle of ejusdem generis or the historical antecedents. Why were the words “another person” employed instead of the word “prostitute”? The historical precedent lies in the proposed 1924 amendment to subdivision 4 of section 887 of the old *786 Code of Criminal Procedure. Prior to 1965 that was the first and only time that the words “another person” were used to describe a prostitute. The explanation given in 1924 (as above) was “to remove a discrimination which now exists against women, by adding words to the present law which cannot be construed as limited to persons of one sex and by striking out words which have been so limited in their definition.” Obviously, the words referred to were “prostitute” and “prostitution”, which male Judges had historically said could only apply to women. Thus, to avoid the pitfalls of the language in the Model Penal Code, New York led the way by employing a gender-neutral phrase, “another person.” (Seen 20.)
There is one final argument in Bronski (76 Misc 2d 341, 342-343) that merits consideration. Judge Stone writes: “By condemning mere solicitation on the part of a patron, the Legislature has sought to eradicate an age-old problem by attacking its cause — the demand. This is the exact purpose of the statute. Otherwise the patron would be permitted to proceed on his way uncondemned by the law, until he finally finds a person willing to satisfy him.” (Emphasis supplied.)
In effect, what Judge Stone is saying is that if you cannot use a decoy policewoman to ensnare a “John”, he will continue on his way, annoying innocent women, until he finds a professional to satisfy him. This form of deductive reasoning attempts to define legislative intent by beginning with the premise “what is the easiest way to catch a John” ; and then from that premise goes on to justify a legislative intent that would include a decoy policewoman. However, to belie this conclusion, the Legislature, in 1976, passed section 240.37 of the Penal Law (Loitering for the purpose of engaging in a prostitution offense): “2. Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute as those terms are defined in article two hun *787 dred thirty of the penal law, shall be guilty of a violation and is guilty of a class B misdemeanor if such person has previously been convicted of a violation of this section or of sections 230.00 or 230.05 of the penal law.”
The legislative intent of this statute was clearly spelled out in a preface (L 1976, ch 344):
“Section 1. The legislature hereby finds and declares that loitering for the. purpose of prostitution, patronizing or promoting prostitution is disruptive of the public peace in that certain persons engaged in such conduct in public places harass and interfere with the use and enjoyment by other persons of such public places thereby constituting a danger to the public health and safety.
“The legislature further finds that in recent years the incidence of such conduct in public places has increased significantly in that persons aggressively engaging in promoting, patronizing or soliciting for the purposes of prostitution have, by their course of conduct in public places, caused citizens who venture into such public places to be the unwilling victims of repeated harassment, interference and assault upon their individual privacy, as a result of which such public places have become unsafe and the ordinary community and commercial life of certain neighborhoods has been disrupted and has deteriorated.”
By the enactment of section 240.37 the New York State Legislature has said, that in order to avoid the problem Judge Stone feared would be unsolved if section 230.02 did not include a decoy policewoman, what was needed was not a clarifying amendment to section 230.02 but a separate statute that had nothing to do with patronizing a prostitute, but which clearly interdicts the activities of a “John.” Section 240.37 permits the police to use a decoy or any other police technique; but the protection to the “John” who was not out on the streets to hunt out another person for hire is clearly embodied in the statute. The emphasis on the word “repeatedly” indicated that the Legislature wished to avoid the type of “one-shot” situation present in Bronski and in these two cases.
Whether the defendants initiated the “solicitation” or the decoy policewoman did is a question of fact for the court or *788 jury. It is the type of isolated fact that lends itself to abuse in the hands of a zealous prosecutor. One can envision the defendant, out on the streets for an innocent purpose, ensnared into a conversation by an attractive decoy. Then, defendant is arrested under section 230.03 of the Penal Law and a possible conviction of a class B misdemeanor.[23] If that could happen under section 230.03, then why the need for section 240.37 — with “repeated” actions the criterion? The answer is that the Legislature never believed section 230.03 was meant to cover any situation but one involving a “John” and a “prostitute”.
Both complaints are dismissed for failure to spell out a prima facie case under section 230.03 of the Penal Law. The purpose of section 230.03 is to treat the “John” and the “prostitute” equally. It was not intended to create the independent crime of ^soliciting” (which is proscribed in section 240.37).

. “There shall be no whore of the daughters of Israel, nor a sodomite of the sons of Israel.”

. “Prostitution”, by Vern & Bonnie Bullough, Crown Publishers, Inc., NY, Introduction.

. The State of Nevada, for example, has delegated to the legislative bodies of each county having a population of less than 200,000 (thus eliminating Las Vegas and Reno) the authority to license, tax and regulate houses of prostitution (Nev Rev Stats, §269.175 [1968]). Today there are over 40 “legalized” houses of prostitution throughout the State. Nevada, however, is the only one of the 50 States that treats the “profession” on an “honorable” basis.

. All States (in Nevada where not legalized) have criminal statutes proscribing either the status, the activity or the negotiation of prostitution (by either the prostitute or the procurer) — with penalties ranging from $100 to 10 years in jail.

. The statute of Circumspecte agatis (13 Edw I, Stat 4 [1285]) forbade the Judges of the common-law courts to interfere with the Courts Christian in punishing offenses of the incontinent. (See Bailey v United States, 98 F2d 306.)

. Subdivision 4 of section 887 of the Code of Criminal Procedure.

. See Kanowitz, Women and the Law: The Unfinished Revolution, 16-18 (1964).

, Penal Law, art 230.

. Police department regulations prohibit this type of on-the-job activity.

. McKinney’s Cons Laws of NY, Book 1, Statutes, § 239, subd b, explains the rule of ejusdem, generis-. “The ejusdem generis rule of statutory construction requires the court to limit general language of a statute by specific phrases which have preceded the general language, but the rule will not be applied where it contradicts the evident intent of the Legislature.”

. People v Bronski, 76 Misc 2d 341.

. People v Bronski, 76 Misc 2d 341, supra.

. When the statute was amended in 1978, the subdivisions were renumbered.

. McKinney’s Cons Laws of NY, Book 1, Statutes, § 271; People v Nelson, 153 NY 90; People v Christensen, 19 AD2d 535.

. Penal Code of 1881, § 11.

. McKinney’s Cons Laws of NY, Book 1, Statutes, § 276, p 446.

. McKinney’s Cons Laws of NY, Book 1, Statutes, § 125.

. Matter of Koner v Procaccino, 45 AD2d 551; Matter of Hermance v Board of Supervisors of Ulster County, 71 NY 481.

. Philbrick & Brother v Florio Co-op. Assn., 137 App Div 613, off 200 NY 526.

. Prior to the passage of the Missouri statute (Grim Code, § 567.030 [which is identical in language to New York’s]) an interesting committee comment was published;
*785 “Comment to 1973 proposed Code
“Based on New York Revised Penal Law 230.05 (1967) and Michigan Revised Criminal Code § 6205 (Final Draft 1967). This provision would be new to Missouri law. The Model Penal Code and the revised Illinois and Wisconsin codes also include the patronizing offense.
“There are good reasons for having this offense. Most important is the argument that dual proscription should aid in curtailing prostitution and in reducing venereal disease. Police who conduct a raid on a house of prostitution should not be required to distinguish between the patron and the prostitute; both should be subject to arrest and prosecution. It is also arguable that it is unjust to punish the prostitute alone. The Michigan drafters provided that the patron should be subject to the same punishment as the prostitute.”

. Michigan Compiled Laws Annotated, § 750.448, “Any person, male or female, 17 years of age or older, who shall accost, solicit or invite another in any public place, or in or from any building or vehicle, by word gesture or any other means, to commit prostitution or to do any other lewd or immoral act, shall be guilty of a misdemeanor.”

. Prior to September 1, 1978, the penalty for a “John” was a violation; whereas, the penalty for a “prostitute” was a class B misdemeanor. To correct this inequality of treatment, the Legislature in 1978 raised the penalty for a “John” to a class B misdemeanor.

. Added L 1976, ch 344, eff July 11, 1976.