OPINION OF THE COURT
William M. Erlbaum, J.
Defendants, Carol Link and Debra Meltsner, are charged with the crime of prostitution.[1] They have moved for trial by jury, claiming that CPL 340.40 (subd 2)[2] (which directs that the trial shall be before a single Judge) is unconstitutional, first, because prostitution is not a “petty” but a “serious” offense requiring trial by jury under the Federal Constitution,[3] second, because that *974 section denies them “equal protection” by withholding the right to trial by jury in class B misdemeanor[4] trials in New York City while permitting jury trials of such cases in the remainder of the State.
I
Whether a crime is serious or petty can be determined by several criteria.[5] In Duncan v Louisiana,[6]
[7]the Supreme Court held that the length of any sentence of imprisonment that may be imposed is a major but not exclusive criterion. In Baldwin v New York[1] the court held that exposure to incarceration for more than six months conclusively establishes the crime charged as serious.
Both Duncan and Baldwin certified the continuing validity of earlier holdings[8] that the nature of an offense and a defendant’s exposure to disabilities other than incarceration may also qualify that offense as serious.
Thereafter, the Supreme Court decided Codispoti v Pennsylvania,[9] involving a criminal contempt conviction. The opinion contained language which the District Attorney herein relies upon in opposing defendant’s motion: “our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.”[10] The District Attorney then argues that inas *975 much as convicted prostitutes may be jailed for up to only three months, prostitution is ipso facto a petty offense.
To the contrary, I hold that in Codispoti, the fixed dividing line of six months was only intended to be the criterion of whether or not an offense is serious where it is not otherwise inherently serious apart from the sentence to which the defendant is exposed.[11]
Taylor v Hayes[12] announced the same day as Codispoti, explicitly recognized that some crimes are serious “ ‘regardless of the penalty involved.’ ”[13] In Ludwig v Massachusetts,[14] the court again observed that the length of the defendant’s exposure to jail is “usually”[15] but not exclusively the measure of the seriousness of the charge. In Scott v Illinois,[16] the court again noted that even as to offenses carrying incarceration of six months or less, trial by jury is only unnecessary “ ‘if they otherwise qualify as petty offenses’ ”.[17]
II
Like the institution of marriage[18] itself, prostitution is older than the common law.[19] The District Attorney does
*976 not dispute that even if there were no incarceration involved, a prostitution conviction results in profound consequences for the person convicted. From biblical[20] times and throughout the world[21] today, to mark a woman a prostitute is to designate her a pariah.[22] Whether she is described as a “hustler,” a “hooker,” a “bawd” or a “harlot,” a “biffer,” a “trull,” “pigmeat” or a “whore,”[23] the prostitute bears the opprobrium of “the fallen woman”.[24] Conviction exposes her to banishment by deportation[25] to a foreign land; to denial of entry[26] into America; to summary divorce[27] at the inception of her husband; to being declared an unfit mother and deprived of the custody[28] and visitation of her children; to expulsion from her residence;[29] to exclusion from many forms of endeavor;[30] and, with every expectation that her word of accusation will carry little weight in court[31] (for, who would believe her?), to being freely raped.[32]
Judges have described prostitutes as “malodorous and evil characters,”[33] perpetrators of “evil and wrongdoing,”[34] *977 underminers of “public morals and decency *** befitting good people,”[35] and as “vicious”[36] and “vile”.[37] To great masses of people, the prostitute is “connected to other crime-related activities and is a significant factor in increasing such crimes as robbery, assault, and narcotic possession and sale.”[38] They associate her with organized crime,[39] public indecency,[40] family instability,[41] the blight of tourist and commercial areas,[42] and the spread of venereal disease.[43]
At bottom, however, the quintessential thrust of the label “prostitute” is to denominate the creature to whom it is affixed as, through and through, unprincipled, a low life, one who would sell out any loyalty, desecrate any covenant, and, literally as well as characterologically as one willing to do just about anything for the right price.[44] It is well-nigh inevitable that a woman so branded will be banned from the office, the factory, the home and the church. Ultimately, as defendants claim without dispute, the convicted prostitute is likely to despise herself.[45]
If there is a class of cases more eligible than prostitution for designation as “serious”, notwithstanding that incarceration for more than six months is not in the picture, I have yet to find it.[46]
*978 III
Ironically, the governmental authorities of New York County treat the crime of prostitution as serious. Desk appearance tickets in lieu of arrest, used in a wide variety of misdemeanor cases including many involving moral turpitude and violence, are never used in prostitution cases.[47] Accused prostitutes are always subjected to formal arrest.
The Criminal Justice Agency routinely interviews defendants and submits reports to the arraigning Magistrate in every felony category and in every type of misdemeanor case except one, concerning defendants’ eligibility to be released upon their own recognizance. The one exception is the case of prostitution, where those steps are never taken.[48]
*979 Adjournments in contemplation of dismissal[49] are granted upon the application of the District Attorney to first offenders in a wide variety of misdemeanor cases. The District Attorney never makes this application in prostitution cases.[50]
Likewise, the District Attorney freely consents to the acceptance of guilty pleas to reduced charges in countless categories of crime but never in prostitution cases.[51]
Only in prostitution cases does the District Attorney have a uniform and unremitting policy of opposing all defense motions to dismiss first offender cases in the interests of justice.[52] No matter how desperate were the circumstances which brought the offense into being, no matter how catastrophic are the predictable consequences of conviction to the first offender, the District Attorney’s unvarying position is that dismissal should be denied on account of prostitution’s adverse impact upon the quality of life in New York County.[53]
The District Attorney thus shares with the community the disapprobation for those who mock and degrade sex by selling it commercially. Having shown the seriousness with which prostitution is regarded by the community and its designated officials, the District Attorney should not now say that such conduct is minor and that the attendant safeguard of trial by jury, before those accused can be convicted and branded, may be brushed aside.
IV
The court finds that prostitution, no matter how lightly punished, is a serious crime[54] and may not be prosecuted without the right to trial by jury. To the extent that CPL *980 340.40 (subd 2) makes such trial unavailable in New York County, to wit, to these two defendants, that section contravenes the Sixth and Fourteenth Amendments to the Federal Constitution and is null. In light of this resolution of the motion, it is unnecessary to reach and pass upon defendants’ “equal protection” claim.[55]
Motion granted. Trial by jury ordered.[56] Order stayed 30 days to afford the District Attorney adequate time to pursue his legal options.[57]

. Section 230.00 of the New York Penal Law places the offense in the class B misdemeanor category.

. New York CPL 340.40 (subd 2) provides that: “In any local criminal court a defendant who has entered a plea of not guilty to an information which charges a misdemeanor must be accorded a jury trial, conducted pursuant to article three hundred sixty, except that in the New York City criminal court the trial of an information which charges a misdemeanor for which the authorized term of imprisonment is not more than six months must be a single judge trial. The defendant may .at any time before trial waive a jury trial in the manner prescribed in subdivision two of section 320.10, and consent to a single judge trial.”

. The Constitution provides that: “The Trial of all Crimes, except in Cases of Impeachment, shall be by jury”. (US Const, art III, § 2, par 3.) The Sixth Amendment provides that: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury”. (US Const, 6th Arndt.)
The right to trial by jury, held not to apply to so-called petty or trivial offenses (Callan v Wilson, 127 US 540), was made applicable to the States in Duncan v Louisiana (391 US 145).
Defendants herein do not make any claim under the New York Constitution, which leaves the mode of trial entirely up to the Legislature. (NY Const, art VI, § 18, subd a.)

. A class B misdemeanor crime exposes the convicted defendant to imprisonment which shall not exceed three months. (Penal Law, § 70.15, subd 2.)

. These include whether the crime is one of moral turpitude (Schick v United States, 195 US 65, 67); whether it is malum in se or malum prohibitum (District of Columbia v Colts, 282 US 63, 73; Natal v Louisiana, 139 US 621, 622; the severity of the authorized penalty (Baldwin v New York, 399 US 66), or if no penalty limit is fixed, then the penalty actually imposed (Bloom v Illinois, 391 US 194); whether the crime was indictable at common law (Callan v Wilson, 127 US 540, 555, supra); and perhaps others.
The categories “serious” and “petty” are “ill-defined, if not ambulatory * * * [such that] the definitional task necessarily falls on the courts”. (Duncan v Louisiana, 391 US 145, 160, supra.)

. 391 US 145, 159, supra.

. 399 US 66, supra.

. Callan v Wilson, 127 US 540, supra; Natal v Louisiana, 139 US 621, supra; Schick v United States, 195 US 65, supra; District of Columbia v Colts, 282 US 63, supra; District of Columbia v Clawans, 300 US 617; Cheffv Schnackenberg, 384 US 373; Dyke v Taylor Implement Co., 391 US 216.

. 418 US 506.

. 418 US, supra, at p 512.

. United States v Woods, 450 F Supp 1335,1340; United States v Sanchez-Meza, 547 F2d 461,463-465; Brady v Blair, 427 F Supp 5,9; Connolly, The Petty Offense Exception and the Right to a Jury Trial, 48 Fordham L Rev 205, 218; cases going both ways are cited in Matter of Gold v Gartenstein, 100 Misc 2d 253.

. 418 US 488.

. 418 US 488, 496, quoting Bloom v Illinois, 391 US 194, 211.

. 427 US 618.

. 427 US, supra, at pp 624-625.

. 440 US 367.

. 440 US, supra, at p 371, quoting Duncan v Louisiana, 391 US 145, 159, supra.

. See Griswold v Connecticut, 381 US 479, 485-486.

. Concerning the ancient character of rules aimed at “the world’s oldest profession” (People v Smith, 44 NY2d 613, 617-618; see People ex rel. Duntz v Coon, 67 Hun 523; People v Bailey, 105 Misc 2d 772, 773, n 1).
Although prostitutional activity of a purely private and clandestine nature was brought to the attention of the church courts in 13th century England (and thus it has been claimed that prostitution was not a crime at common law, Bailey v United States, 98 F2d 306, 308; Austin v United States, 299 A2d 545; Marshall v United States, 302 A2d 746), by the time of the American common law, such activity was prosecuted in common law courts. (Rassmussen v United States, 197 US 516; State v Waymire, 52 Ore 281; Warren v People, 3 Parker Cr Rep 544, 547; Miller v Commonwealth, 88 Va 618; Ogden v City of Madison, 111 Wis 413; Commonwealth v Wesley, 171 Pa Super Ct 566; Gaithor v United States, 251 A2d 644, 645.)
Nor is a common-law antecedent an indispensable requirement before an offense may be deemed serious; the scope of the sentence alone may require that designation; e.g., *976 Duncan v Louisiana (391 US 145, supra [simple assault and battery which was not an indictable offense at common law]); Goldman v Kautz (111 Ariz 431); United States v Newberne (427 F Supp 361, 362); e.g., Bloom v Illinois (391 US 194, supra [criminal contempt, which, likewise, was not an indictable offense at common law]); see Cheff v Schnackenberg (384 US 373, 381, n 1, supra [Harlan, J., concurring]); United States v Barnett (376 US 681, 696-697, at pp 750-751 [where Judge Goldberg dissented]).
See, also, District of Columbia v Clawans, 300 US 617, 627, 630; City Ct. of City of Tucson v Lee, 16 Ariz App 449, supra; United States v Woods, 450 F Supp 1335, 1342-1345.

. People v Bailey, 105 Misc 2d 772, 773, n 1, supra.

. The New York Times (July 4, 1980, p 1) reported the execution by stoning of a woman convicted of prostitution in Iran.

. Battles v Tyson, 77 Neb 563; Conner v Niemiec, 25 AD2d 857; Civil Rights Law, § 77.

. C. Winick & P.M. Kinsie, The Lively Commerce (1971), p 41; People v Bailey, 105 Misc 2d 772, 773, n 1, supra.

. Rosenbleet & Pariente, The Prostitution of the Criminal Law, 11 Amer Grim L Rev 373, 391, citing Matter of Carey, 57 Cal App 297.

. US Code, tit 8, § 1251, subd (a), par (12); Marlowe v United States Immigration & Naturalization Serv., 457 F2d 1314; Greene v Immigration & Naturalization Serv. of Los Angeles, 313 F2d 148.

. US Code, tit 8, § 1182, subd (a), par (12).

. S. T. Grand, Inc. v City of New York, 32 NY2d 300.

. See People v Anderson, Grim Ct NY County, Part AP 3, Docket Nos. N9630498, 0N002954, July 10, 1980, p 3, Soloff, J.

. Real Property Law, § 231; Multiple Dwelling Law, §§ 352, 353, 354 et seq. RPAPL 715 & 1980-1981 Pocket Part; Public Health Law, art 23, tit II, §§ 2320-2334; Administrative Code of City of New York, ch 16, tit C; Hauer v Manigault, 160 Misc 758.

. E.g., Alcoholic Beverage Control Law, § 102, subd 2, par (h).

. McCarthy v McCarthy, 143 NY 235; Moller v Moller, 115 NY 466.

. See People v Gonzalez, 96 Misc 2d 639.

. Remedco Corp. v Bryn Mawr Hotel Corp., 45 Misc 2d 586, 588.

. Supra.

. Hauer v Manigault, 160 Misc 758, 759.

. Supra.

. People ex rel. Clark v Keeper of N. Y. State Reformatory for Women at Bedford, 176 NY 465, 474 (Gray, J., dissenting).

. Rosenbleet & Pariente, The Prostitution of the Criminal Law, 11 Amer Grim L Rev 373, 417; L’Hote v New Orleans, 177 US 587, 596.

. See People v Luciano, 277 NY 348; Matter of P., 92 Misc 2d 62, 79-80, revd sub nom. Matter of Dora P., 68 AD2d 719.

. Matter of P., supra, 92 Misc 2d, at p 82.

. Supra, at pp 80-81; Caminetti v United States, 242 US 470, 486-487.

. People v Smith, 44 NY2d 613, 618; People v James, 98 Misc 2d 755.

. Public Health Law, § 2302; People v Johnson, 252 NY 387; People ex rel. Krohn v Thomas, 133 Misc 145; People v Anonymous, 161 Misc 379, 383; Winick & Kinsie, The Lively Commerce (1971), p 257.

. Carpenter v People, 8 Barb 603, 610-611; Caminetti v United States, 242 US 470, 487; United States v Bitty, 208 US 393, 402.

. Battles v Tyson, 77 Neb 563, supra; defendants’ brief, citing James, The Many Faces of Suicide: Indirect Self-Destructive Behaviors (1980), p 341 et seq., & K. Davis, The Sociology of Prostitution, 2 Amer Soc Rev 744.

. The few judicial opinions concerning prostitutional activity and the right to trial by jury are inconclusive.
A. Some are pre-Duncan cases that turn upon principles of State law. (Warren v People, 3 Parker Cr Rep 544 [yes]; Miller v Commonwealth, 88 Va 618 [yes]; People v
*978 Iverson, 46 App Div 301 [no]; People ex rel. Clark v Keeper, 176 NY 465 [yes, by implication]; People ex rel. St. Clair v Davis, 143 App Div 579 [no, by implication]; People v Harding, 115 Misc 298 [no].)
B. Other cases relate to local ordinances. (Wong v City of Astoria, 13 Ore 538 [no]; Ogden v City of Madison, 111 Wis 413 [no]; Commonwealth v Wesley, 171 Pa Super Ct 566 [yes]; Powers v State of Florida, 370 So 2d 854 [yes].)
C. One case, although apparently authoritative, is of old vintage and contains only sparce reference to the critical issue herein. (Rassmussen v United States, 197 US 516 [yes].)
D. Other cases are premised upon two strained assumptions, first, that prostitutional activity was not dealt with by the common law; second, that crimes without common-law antecedents are precluded from being deemed “serious”. (See n 19, supra.) (Bailey v United States, 98 F2d 306, supra [no]; Austin v United States, 299 A2d 545, supra [no]; Marshall v United States, 302 A2d 746, supra [no].)
E. One case is based upon what appears to me to be a false premise, to wit, that “[t]he guidelines laid down by the Supreme Court in Duncan v Louisiana, 399 US 145 (1968), recognized that the right to a jury trial is not so fundamental to be required, as a matter of Due Process, if the maximum sentence for the crime charged is less than six months.” (The Legislature acted upon the same premise in enacting CPL 340.40, subd 2; see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 340.40, p 59; People v Long, NYLJ, June 21,1979, p 10, col 6, p 11, col 1 [no]; see notes 11-17 and accompanying text, supra.)
F. A sixth grouping consists of cases where, for the most part, nobody contended and everybody simply assumed that prostitution was a “petty” offense, and where the only disputed issue was the equal protection issue posed by CPL 340.40 (subd 2). (People v Long, supra [no]; People v Taylor, Crim Ct NY County, Part AP 1, Docket Nos. N4758, N4777, April 17,1980, Rotker, J. [no]; People v Anderson, Crim Ct, NY County, Part AP 3, Docket Nos. N963049, 0N002954, July 10, 1980, Soloff, J. [no].)

. CPL art 150; People v Izsak, 99 Misc 2d 543, 552; cf. People v Doe, NYLJ, April 6, 1979, p 12, col 3.

. Directive No. D-48 (Nov. 16,1976) from Julian M. DeLaRosa, then Chief Clerk/Deputy Executive Officer — Operations, to Albert Feureisen, then Acting Borough Chief Clerk/New York Court Clerks — NY County; cf. People v C.S., Crim Ct, NY County, Part AP 9, Docket No. N961405, Nov. 28,1979, pp 3-4, Berkman, J.; NYLJ, Dec. 10,1979, p 13, col 5.

. CPL 170.55, Supp 1980-1981.

. People v Izsah, 99 Misc 2d 543, 552; People v James, 98 Misc 2d 755; cf. People v Doe, NYLJ, April 6, 1979, p 12, col 3.

. People v James, 98 Misc 2d 755, supra; People v Izsak, 99 Misc 2d 543, 552, supra.

. See CPL 170.40, Supp 1980-1981; see n 50, supra.

. The District Attorney is reported to have observed that (prostitution) “has a serious negative impact on the quality of life in the City, and the economic viability of the City”, Daily News, March 28, 1979, p 18, as quoted in defendants’ brief.

. The “objective” factor (District of Columbia v Clawans, 300 US 617, 628, supra) as reflected in “the existing laws and practices in the Nation” (Duncan v Louisiana, 391 US 145,161, supra) is this: In at least 25 States, trial by jury is granted in prostitution cases. *980 To arrive at this figure, I applied the six-month test of Baldwin v New York (399 US 66) to a chart containing the authorized sentences for prostitution convictions as reported in 1973 national survey. (See Rosenbleet & Pariente, The Prostitution of the Criminal Law, 11 Amer Crim L Rev 373, 422-426.)

. The District Attorney argues that “defendants have no fundamental right to a jury trial of the informations charging them with class B misdemeanors bearing maximum penalties of three month’s imprisonment. Therefore, the appropriate standard of review as to the constitutionality of the classification created in GPL Section 340.40 (2) is the ‘rational nexus’ test. Application of that test to GPL Section 340.40 (2) reveals that it is reasonably related to a legitimate state interest in limiting the extreme congestion in the New York City Criminal Courts” (People's answering memorandum of law).
The District Attorney does not suggest that the alleged administrative inconvenience of granting trial by jury in prostitution cases could possibly justify denying such mode of trial where the Federal Constitution — and not merely a statute — confers the right to have such a trial. Therefore, as I do not reach the equal protection issue, left open in Baldwin v New York (399 US 66, 71, n 17, supra) but later decided in conformity with the District Attorney’s argument, in the lower court cases cited in note 46 F. of this opinion, there is no occasion to resolve the claim of inconvenience. Suffice it that of 14,247 prostitution cases in Manhattan Criminal Court in 1979 (made up of 3,961 straight prostitution cases [Penal Law, § 230.00] and 10,286 loitering for prostitution cases [Penal Law, § 240.37]), a total of 15 cases went to trial (11 straight prostitution cases plus 4 loitering for prostitution cases). (See n 57, infra.)
Research has failed to disclose any comparable hard data for cities such as Buffalo and Rochester where an accused prostitute may have a jury trial as of right; however, telephone interviews with officials in those cities yielded the impression that there had apparently been no prostitution jury trials in recent memory.

. Gold v Gartenstein, 100 Misc 2d 253; People v Denning, 98 Misc 2d 369; and Matter of Morgenthau, NYLJ, March 21, 1980, p 13, col 3, are distinguishable from this case. They deal with CPL 340.40 (subd 7) — not with subdivision 2.
Those opinions are based upon the premise that the very nature of youthful offender procedure makes the youthful offender adjudication “petty”, e.g., no criminal record, as such, arises; the accusatory instrument is sealed; all court records are confidential; etc. (See People v Joseph M., 84 Misc 2d 1046, 1047; cf. Matter of Felder, 93 Misc 2d 369.)

. Gratitude is expressed to Deputy Borough Chief Clerk of the Court, George Bessinger, for his arduous statistical compilation of 1979 prostitution cases referred to in note 55, supra; to Kathy Friedman, Ellen Goldstein and John Ray of the Law Department of the court, for their extensive legal research; to New York Attorney Jonathan R. Goldberg, for his helpful suggestions pro bona publico; and to Assistant District Attorney Jane Sachs and defense counsel Kenneth R. Fields, for their excellent briefing of the issues.