■ In the Matter of SANFORD M. SILVERBERG et al., Petitioners, v JOHN A. DILLON, as Judge of the Erie County Court, et al., Respondents.—Petition denied, without costs. Motion to strike affidavit denied. Memorandum: Petitioners Silverberg and Hamsher are lawyers who on October 24, 1978

while in a conference room in Part 4 of the Family Court of Erie County caused a .38 caliber revolver to discharge. Hamsher suffered a superficial wound to his left index finger. The two attorneys had been discussing their guns and Hamsher asked to see Silverberg's revolver. Silverberg took his gun out—unloaded it without counting the shells—and handed it to Hamsher who dry fired it. When Hamsher pulled the trigger the second or third time the gun discharged. As a result of this incident and on the same day, then Erie County Court Judge Colucci suspended each of the petitioner's pistol permits. A letter dated October 24, 1978 advising of the suspension and directing them to turn their weapons over to police authorities was sent to petitioners by the Administrator of the Pistol Permit Department of Erie County. Thereafter an informal hearing was held on November 6, 1978. Both petitioners appeared before Judge Colucci and were advised to voluntarily surrender their permits. Subsequently, both petitioners were told by the administrator, upon instructions from the Judge, that the suspensions would be continued for another six months. On May 7, 1979 the administrator informed both petitioners that inasmuch as the six-month period was about over he would hold hearings on May 11, 1979 relative to a final determination on their pistol permits. Both men appeared and were shown the Sheriff's report of the incident which indicated that it was accidental; but that they had used poor judgment in the handling of a weapon. Petitioners were advised by the administrator that he would recommend to Judge Dillon, the present supervising County Court Judge (Judge Colucci retired December 31, 1978), that their permits be revoked. On May 18, 1979 petitioners were further advised that all papers in the matter had been turned over to Judge Dillon and that if they wanted to be heard they should contact him. Neither petitioner took any action and on May 31, 1979 the administrator advised each of them in writing that his pistol permit had been canceled by order of Judge Dillon. On this application petitioners argue that the "law of the case" precluded Judge Dillon from acting; that they were denied due process and that the sanction imposed was harsh and excessive. None of these arguments is persuasive. It appears that the policy of the Pistol Permit Department is to review permit suspensions at the end of the suspension period upon the totality of all the facts involved in order to determine whether to return the permit, continue the suspension or revoke and cancel the permit. The first Judge orally indicated that the suspension of the permits would be for six months and may well have intended their eventual return to petitioners. However, he did not memorialize such intention either by a written order or by an oral direction to the administrator. Thus the present Judge had before him a written suspension with no indication of duration (although concededly there was an oral indication from the administrator that it was to be for approximately six months) and, more significant, without specification as to what was to occur upon the expiration of the suspension. It is fundamental that one Judge may not review or overrule an order of another Judge of co-ordinate jurisdiction in the same proceeding (Matter of Wright v County of Monroe, 45 AD2d 932). The decision of the Judge who first rules in a case binds all courts of co-ordinate jurisdiction as "the law of the case" (Belski v New York Cent. R. R., 38 AD2d 882, 883), regardless of whether a formal order was entered (Collins, Inc. v Olsker-McLain, Ind., 22 AD2d 485, 489). The "law of the case" doctrine articulates the sound policy that, within various stages of the same litigation, an issue once judicially determined should end the matter so far as Judges of co-ordinate jurisdiction are concerned (Martin v City of Cohoes, 37 NY2d 162; Matter of McGrath v Gold, 36 NY2d 413).

However, the rule does have limitations which relate, for example, to those situations where findings made speedily by one Judge for a temporary purpose will not bind another Judge who has to decide the merits at a later time (Siegel, New York Practice, § 448, p 594; 1 Carmody-Wait 2d, NY Prac, § 2:68). Moreover, its application is a matter of judicial discretion and not a limitation on the court's power (*Matter of Wright v County of Monroe, supra; Parker v Rogerson*, 33 AD2d 284, 290-291, app dsmd 26 NY2d 964; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.09; Note, Law of the Case, 40 Col L Rev 268, 271). The statute with respect to licensing relating to firearms merely provides that "A license may be revoked and cancelled at any time * * * by any judge or justice of a court of record" (Penal Law, § 400.00, subd 11). No provision is made in the statute for suspension, temporary or otherwise. Viewed in this light it appears that the first Judge's finding was made speedily (the same day as the incident) for a temporary purpose, i.e., to suspend the permits and obtain possession of petitioners' weapons by having them turned over to the police. It was not intended to be a sanction binding upon the second Judge who would pass on the merits at a later time. In fact, the second Judge also had the benefit of a full police report and the administrator's recommendation before him when he revoked and canceled petitioners' licenses as provided under the Penal Law. We find, therefore, no abuse of his discretion in the action taken by the second Judge. Further, there was no denial of due process inasmuch as petitioners had notice of the hearing before the administrator and each appeared and was granted an opportunity to present whatever arguments he wished to make to him and to the Judge prior to his ruling (*Matter of St.-Oharra v Colucci*, 67 AD2d 1104). Finally, on the merits, we cannot conclude under the circumstances that the determination to revoke and cancel petitioners' pistol permits was either arbitrary or capricious. All concur, except Callahan, J., who dissents and votes to grant the petition, in the following memorandum.

Callahan, J. (dissenting). While the majority enunciate the applicable law, this court must not engage in conjecture upon what Judge Colucci intended by his specific declarations. The pistol permit administrator by letter dated October 24, 1978 notified appellants that "Your pistol permit * * * has been suspended by the Honorable Ernest L. Colucci". They were subsequently notified in a letter from the administrator dated May 31, 1979 that the permit has been canceled by order of the Honorable John A. Dillon. Such an order is improper in view of the affidavit of Ernest L. Colucci sworn to on the 4th day of September, 1979 "that it was not the desire of your deponent to order that the permits be revoked but only suspended. That * * * your deponent expressed his view on same to Nicholas Baich" the administrator. The subsequent order of the succeeding Judge is an improvident exercise of discretion (*Matter of Wright v County of Monroe*, 45 AD2d 932). Accordingly, the permits should be reinstated. (Art. 78.) Present—Cardamone, J. P., Hancock, Jr., Schnepp, Callahan and Moule, JJ.