OPINION OF THE COURT
Joseph A. Cerbone, J.
This defendant was originally indicted on June 23, 1982 for the crime of manslaughter in the second degree, arising out of a homicidal incident alleged to have occurred on June 13 of that year. The Grand Jury minutes reflect the fact that in reaching this determination consideration was given to the crimes of murder in the second degree as well as manslaughter in the first degree and that such charges were impliedly dismissed.
Subsequently on or about September 13, 1982, an application was made to dismiss this indictment based upon the allegation that the defense of justification was either “not charged or * * * improperly submitted considering the fact that this incident occurred within the defendant’s residence and after he was attacked by the deceased” (Penal Law, § 35.15, subd 2, par [a]) and in response to this application an order was entered dismissing the indict *677 ment with leave to the People to re-present the same before another Grand Jury. (Sept. 15, 1982, Warner, J.)
Since justification is not a defense to reckless manslaughter (manslaughter, second degree), the sole rationale for making such an application was defendant’s belief that, based upon the evidence accompanied by proper and adequate instructions on the defense of justification, emphasizing the fact that the defendant was not the initial aggressor and that the incident occurred in his dwelling thus absolving him from any obligation to retreat (Penal Law, § 35.15, subd 2, par [a]), “no indictment would properly have been rendered”. This presumption quite naturally inferred that any re-presentation of the evidence would resurrect the intentional charges of murder in the second degree and manslaughter in the first degree, which had been previously dismissed, since in the absence of such intentional crimes, the defense of justification, whether or not properly charged, has no relevancy.
However, contrary to defense counsel’s expectations, the second presentation, based on substantially the same evidence, and with a proper justification charge, resulted in the defendant’s indictment for the higher crime of manslaughter in the first degree.
Faced with this unexpected result, citing People v DeLio (75 Misc 2d 711) and People v Westbrook (79 Misc 2d 902) among other cases, the defendant now moves to dismiss that superseding indictment “without leave to re-present”, since he contends the Grand Jury lacked authority to inquire into these intentional crimes, which had been previously dismissed.
In response, the District Attorney argues that the cases cited are inapplicable, where, as here, “the catalyst for resubmission was the [defendant’s application] not that of the District Attorney and likens the defense application to an all or nothing” legal stratagem designed to “carry the day” and that defendant, having made application for the resubmission, cannot now complain of the undesirable findings of the Grand Jury.
We start with CPL 190.75 (subd 3) which states as follows: “3. When a charge has been so dismissed [by the Grand Jury], it may not again be submitted to a grand jury *678 unless the court in its discretion authorizes or directs the People to resubmit such charge to the same or another grand jury. If in such case the charge is again dismissed, it may not again be submitted to a grand jury.”
This subdivision protects a potential defendant by preventing the District Attorney from resubmitting a matter more than once and by requiring him to obtain permission from the court to resubmit. At common law an order of the court permitting resubmission was unnecessary and a prosecutor was free to resubmit as often as he chose. Under section 270 of the Code of Criminal Procedure, the forerunner of CPL 190.75 (subd 3), the prosecutor was required to obtain permission from the court — but with permission he could resubmit as often as he was allowed.
However “[t]hat the prosecutor is still required to make an application to the court shows that his dissatisfaction with the first Grand Jury * * * is not in itself sufficient reason to permit resubmission * * * [Nor is] the court’s role * * * purely ministerial because the case may not again be submitted ‘unless the court in its discretion authorizes or directs the people to resubmit’ (CPL 190.75, subd 3).” (People v Martin, 71 AD2d 928, 929, citing People ex rel. Flinn v Barr, 259 NY 104; People v Neidhart, 35 Misc 191; People v Groh, 97 Misc 2d 894.) Moreover, the power of the court to order resubmission should be sparingly and discriminately used. (People v Benson, 208 Misc 138; People v Besser, 207 Misc 692; People v Rowe, 36 NYS2d 980; People v Martin, 97 Misc 2d 441, revd on other grounds 71 AD2d 928.) However, the facts that must be shown are not limited to new evidence — a showing that the proceedings before the Grand Jury were in the slightest degree unusual or irregular or that that body did not give the matter a searching investigation and most careful attention would support a resubmission order. (People v Groh, 97 Misc 2d 894, supra.)
Putting aside for the moment the problem of whether this court may review the prior order of a Judge of coordinate jurisdiction (People v Martin, supra, citing Matter of Wright v County of Monroe, 45 AD2d 932; Field v Public Administrator of County of N. Y., 10 AD2d 97; Public Serv. Mut. Ins. Co. v McGrath, 56 AD2d 812; Matter of Rose, *679 NYLJ, July 30, 1981, p 11, col 3, citing Messenger v Anderson, 225 US 436; Werthner v Olenin, 186 Misc 829, affd 272 App Div 798; People v Mason, 97 Misc 2d 706, supra; Matter of Silverberg v Dillon, 73 AD2d 838; Matter of McGrath v Gold, 36 NY2d 406; People v Leone, 44 NY2d 315; People v Fernandez, NYLJ, Oct. 7, 1981, p 15, col 4, citing People v Romney, 77 AD2d 482; CPLR 2221; People v Wright, NYLJ, June 25, 1980, p 7, col 2, quoting Walker v Gerli, 257 App Div 249, and citing United States v United States Smelting Co., 339 US 186; Martin v City of Cohoes, 37 NY2d 162), this court is of the opinion that notwithstanding the accuracy of defendant’s contention that the return of a true bill in the first instance indicting the defendant for manslaughter in the second degree constituted a dismissal of the higher crimes (People v DeLio, 75 Misc 2d 711, supra; People v Westbrook, 79 Misc 2d 902, supra), within the parameters oí People v Groh (supra) the order of resubmission was properly grounded in the interest of justice to provide defendant with the partial defense of intoxication and the complete defense of justification; and, as such, it goes without saying that to provide such defenses, the Grand Jury must, of necessity, be charged on the intentional higher crimes. Nor does anything in the papers persuade me that either defense counsel or the District Attorney was unaware of these potentialities when the application was made. In other words, in relying on the defenses of intoxication and justification, the defendant took the risk of being indicted on the- higher intentional charges which his defenses were tailored to meet.
Moreover, even assuming without conceding that the evidence does not, in fact, support the higher crime, this court is, nonetheless, not at liberty to dismiss such indictment, since a superior court may only dismiss an indictment or count thereof when the evidence is legally insufficient to support that count or any lesser included offense. (GPL 210.20, subd 1, par [b].)
Turning now to the question of whether the evidence before the Grand Jury is sufficient to support the charge of manslaughter in the first degree or any lesser included offense, a fair reading of the testimony indicates that the defendant as well as the deceased was undoubtedly intoxi *680 cated to some degree — “He [Glover] was not falling down drunk — well, high but not * * * drunk, drunk” — that the deceased was the original aggressor and forced the defendant onto the bed where he stabbed him in the chest for which he, the defendant, was treated and bandaged at Lincoln Hospital; that although the defendant has some prior record of criminal activity, it did not involve any violent crime and that it was the defendant who asked that the police be called. In addition, the statement he gave to the police and subsequently to the District Attorney was a classic case of self-defense.
On the other hand, an eyewitness to the unfortunate occurrence (Brenda Martin) testified that immediately subsequent to the stabbing, he, the defendant, Leon Glover went back into the kitchen and returned with an iron pipe, that she did not see anything in the hands of the deceased; that while the deceased had his back to the defendant, he, the defendant, hit him with the pipe “in the head” and twice more as he fell to the floor, stopping only when she, the witness, and her companion “struggled to get him off”. The knife was found in a closed position where the body of the deceased had fallen.
In the original presentation, the witness (Mary Herd) testified that the defendant and the deceased were face-to-face when the initial blow was struck.
Therefore, considering all of the testimony, and other evidence presented, this court is of the opinion that the question of whether or not the deadly physical force employed by the defendant was commensurate with the risk he reasonably felt he faced under all the circumstances might better be left to the trial court.