PEOPLE v. FEGELLI.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

1. PROSTITUTION (§ 1*)—EARNINGS—DIVISION—STATUTES—CONSTRUCTION.
   Penal Law (Consol. Laws, c. 40) § 2460, par. 8, as added by Laws 1910, c. 618, provides that any person who shall knowingly accept, or receive, any money, or other valuable thing without consideration from the earnings of a prostitute shall be deemed guilty of a felony, and on conviction shall be punished, etc., and that any acceptance, receipt, levy, or appropriation of such money or valuable thing shall, on any proceeding or trial for violation of the section, be presumptive evidence of lack of consideration. *Held*, that such statute was not limited to the acts of a "cadet or pimp" subsisting directly on such earnings, but included as well a division of earnings with the manager or financial operator of a house of prostitution.

   [Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

2. PROSTITUTION (§ 1*)—STATUTES—TITLE—LIMITATION OF PROVISIONS.
   The fact that Penal Law (Consol. Laws, c. 40) § 2460, par. 8, as added by Laws 1910, c. 618, prohibiting the receipt, or appropriation of earnings of a prostitute, without consideration, refers to "compulsory prostitution" does not limit the statute to acts committed against the will and consent of prostitutes, but includes their voluntary acts as well.

   [Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

3. PROSTITUTION (§ 1*)—PROCEEDS OF TRAFFIC—DIVISION.
   Where defendant, the financial backer of a house of prostitution, engaged prostitutes, arranged for their medical examination, directed their activities and overcharged them by deducting 60 per cent. and sometimes $10 a day from their earnings, he was guilty of violating Penal Law (Consol. Laws, c. 40) § 2460, par. 8, as added by Laws 1910, c. 618, providing that any person who shall knowingly accept, receive, levy, or appropriate any money or other valuable thing without consideration from the earnings of a prostitute shall be guilty of a felony, etc.

   [Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

4. PROSTITUTION (§ 1*)—OFFENSES—PROCEEDS OF TRAFFIC—DIVISION—"WITHOUT CONSIDERATION."
   The words "without consideration" as used in Penal Law, § 2460 (Consol. Laws, c. 40) par. 8, as added by Laws 1910, c. 618, providing that any person who shall knowingly accept, receive, levy, or appropriate any money or other valuable thing without consideration from the earnings of a prostitute shall be guilty of a felony, etc., mean participating in the proceeds of prostitution and giving nothing for it, but does not include the acceptance of money from prostitutes in exchange for food, shelter, room accommodations, service, attendance, etc.

   [Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*

   For other definitions, see Words and Phrases, vol. 8, p. 7505.]

5. PROSTITUTION (§ 4*)—PROCEEDS—DIVISION—EVIDENCE.
   In a prosecution for participating in the earnings of a prostitute without giving any consideration therefor, in violation of Penal Law (Consol. Laws, c. 40) § 2460, par. 8, as added by Laws 1910, c. 618, slips of paper found in defendant's residence, showing first names of women and figures indicating divisions of money, proved by comparison to be in defendant's

handwriting, were admissible, though the slips were found at a place other than where the principal offense was committed.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4; Dec. Dig. § 4.*]

6. CRIMINAL LAW (§ 1202*)—HABITUAL CRIMINALS—SECOND OR OTHER OFFENSE.

Where an indictment charged accused with two prior convictions, the people were not required to elect on which they would stand; the prosecutor being entitled to prove both as pleaded, in order to establish that defendant was an habitual offender.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3260–3265; Dec. Dig. § 1202.*]

Appeal from Trial Term, Kings County.

Joseph Fegelli, alias Joseph Feggelle, was convicted of knowingly receiving the proceeds of immorality as a second offense, in violation of Penal Law, § 2460, par. 8, and he appeals. Affirmed.

See, also, 147 N. Y. Supp. 1131.

Argued before JENKS, P. J., and CARR, RICH, STAPLETON, and PUTNAM, JJ.

Robert H. Elder, of New York City, for appellant.

Hersey Egginton, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

PUTNAM, J. Although the indictment, following the caption of this section of the Penal Law, charged defendant with the crime of "compulsory prostitution of women," the particular statute of which the jury found defendant guilty reads:

"Any person who shall knowingly accept, receive, levy, or appropriate any money or other valuable thing without consideration, from the proceeds or earnings of any woman engaged in prostitution shall be deemed guilty of a felony and, on conviction thereof, shall be punishable by imprisonment for a period of not less than two years nor more than twenty years and by a fine not exceeding one thousand dollars. Any such acceptance, receipt, levy, or appropriation of such money or valuable thing shall upon any proceeding or trial for violation of this section be presumptive evidence of lack of consideration." Penal Law, § 2460, par. 8.

This provision was enacted by chapter 618, Laws of 1910. This count also set forth two prior convictions, one for felony in the United States court, and the other in the Court of Special Sessions, New York County, of the misdemeanor of keeping a disorderly house.

The testimony showed the defendant as the financial operator or manager of one or two houses of ill fame, who shared the earnings of the inmates. Those women, however, who testified in the case, came to the house and requested from defendant admission, so that there was no compulsion, as they entered the house with their consents. They turned over their earnings to the "madam," and at stated times were paid back a percentage by her, with the appellant present, and in one instance by the appellant himself. The manager retains the rest of their accumulated wages, a sum out of all proportion to the food and shelter and service with which the prostitutes are supplied.

[1] The first question is whether this division, made by inmates voluntarily in such a house, is the offense punishable by this statute, which appellant argues was aimed solely at the "cadet" or pimp, who subsists directly on a prostitute's earnings. In considering this question, resort may be had to the investigation and reports made public in the last 10 years, showing the wide extent of commercialized prostitution. The evil of exploiting prostitution by taking toll of the wages of women who make themselves common, which by such incentives for profit tends to systematize and extend prostitution, had been the subject of detailed reports and strong denunciation. Report of Committee of Fifteen, p. 220 (2d Ed.); Kneeland's Commercialized Prostitution, c. iv.; The Social Evil in N. Y. City, Report of Committee of Fourteen, p. xxxiii (1910). These investigators pointed out that taking a percentage of the earnings of women engaged in prostitution was a leading cause of the growth and wide extent of this vice in cities, so that to stop such division of these wages of vice would be the first step toward reducing the evil. See, also, Report of Vice Commission of Philadelphia, pp. 5, 15, 16 (1913). Even with the lax ideas on this subject on the continent of Europe, this sharing of the earnings of prostitution is recognized as intensifying the spread of this evil; and in Vienna it seems to be prohibited. By the regulations of that city, a prostitute may live in a house, or have apartments, on condition that the landlady "must have no share or percentage in the proceeds of the vicious trade." Brothels are not to be established "in which the mistress of the house figures as the entrepreneur or manager of the business." Vienna Regulations, quoted by Flexner, Prostitution in Europe, Appendix iv, pp. 431, 433. N. Y. 1914.

[2, 3] Prostitution among the ancients, and in the middle ages, has been exploited for the purpose of public revenue. In the great centers of modern civilization a system of professional exploiters of this evil leads to that intensity of vice which has always been a mark of a rotten or declining civilization. All this was before the New York Legislature in 1910, who plainly intended by severe penalties to break up such an abhorrent traffic. The fact that the title of this act refers to "compulsory prostitution" does not limit the statute to acts against the woman's will and consent, since voluntary acts are therein plainly defined. In fact, paragraph 5 refers to placing a woman in a house of prostitution "with, or without her consent." Such a title cannot restrain the plain words of the body of the enactment. Neumann v. City of New York, 137 App. Div. 55, 122 N. Y. Supp. 62. The Legislature intended to grapple with this evil by punishing men, or those higher up, and not stop with ineffective fining and imprisoning of the unfortunate inmates. But it was to meet more than the "cadet" evil. The measure was directed also against the larger and more influential offenders, whose business and stock in trade are gains through prostitution, whose commercialized methods might raise funds which become a constant source of corruption. The testimony amply showed the appellant to have engaged the women, arranged for their medical examination, and directed their activities, and his subsequent taking out a percentage of such wages violated this statute.

[4] The learned court rightly told the jury that the statutory words "without consideration" mean "participating in the money, in the proceeds of the use of her body for prostitution, and giving nothing for it." But he also instructed them that "food, shelter, room accommodations, service, attendance, linen, doctor's treatment, are such things as may constitute consideration under the law, and for which the earnings of a prostitute may be lawfully received." The inmate turned her entire earnings over to the appellant and his agent. In this way appellant retained 60 per cent., sometimes as much as $10 a day, which obviously the jury, as thus instructed, might find was not in consideration of board and maintenance.

[5] The admission in evidence of the slips found in defendant's residence, showing first names of women, and figures indicating divisions of sums of money, were competent, if shown to be in appellant's handwriting. For this purpose, appellant's signature on his bail bond was received as a standard of appellant's genuine handwriting, by which the jury could compare the writing on these slips. In view of the general practice shown to prevail in such disorderly houses, this written evidence, coming from appellant's home, though at another place than that where the principal offense was committed, was nevertheless admissible against appellant.

[6] The indictment charged appellant with two prior convictions. Although the learned counsel for appellant objected, and demanded that the people be required to elect upon which prior conviction they would stand, the prosecutor is not confined to only one prior conviction where two were set out in the indictment. Reg. v. Clark, 6 Cox C. C. 210. The legislative purpose is to impose a longer period of imprisonment on prior offenders. Fegelli was not here convicted on account of the prior convictions which he had expiated. But when convicted of the crime now charged, if identified by the verdict as an habitual offender, he was to be punished according to that class of old offenders. One prior conviction brought him within that class, and two prior convictions would do no more. State of Iowa v. Jones (D. C.) 128 Fed. 626.

This legislation to stop all forms of money-making from earnings by prostitution was a constitutional exercise of the lawmaking power, and appellant was properly convicted and sentenced under its provisions.

I advise that the conviction be affirmed. All concur.