**STATE of Delaware**

v.

**William HICKS, Jr., Defendant.**

Superior Court of Delaware,
New Castle.

Submitted March 3, 1976.

Decided June 24, 1976.

John O'Brien, Deputy Atty. Gen., Wilmington, for State.

Arlen B. Mekler, of Wise & Mekler, Wilmington, for defendant.

O'HARA, Judge.

Defendant has moved for post-conviction relief pursuant to Rule 35(a). Defendant was charged with criminal solicitation (for prostitution) in the third degree, 11 Del.C. § 501, conspiracy (to commit prostitution) in the second degree, 11 Del.C. § 512, and with promoting prostitution in the second degree, 11 Del.C. § 1352. He was convicted of all three offenses in this Court. On appeal the Delaware Supreme Court refused to hear argument on the question of the constitutionality of the underlying prostitution statutes inasmuch as the matter had not been presented to or considered by this Court. The current motion now brings the issue properly to this Court.

The validity of defendant's conviction depends upon the constitutionality of the Delaware prostitution statutes which supply the foundation for the offenses of which defendant was convicted. Defendant's first argument is that 11 Del.C. § 1342 and § 1343[1] violate the basic right to privacy, a concept variously described by the United States Supreme Court as being rooted in the First, Fourth, Fifth, Ninth and Fourteenth Amendments. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 243, 22 L.Ed.2d 542 (1969); *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Griswold v. State of Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Meyer v. State of Nebraska,* 262 U.S. 390, 43 S.Ct.

625, 67 L.Ed. 1042 (1923). Defendant contends that the right to engage in sexual relations in a manner of one's own choosing, regardless of whether or not a fee is involved, falls within the penumbra of rights protected by the constitutional right to privacy. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. State of Connecticut,* supra; *Stanley v. Georgia,* supra.

The threshold issue here has recently been ruled upon in this Court by Judge Joseph J. Longobardi, in *Blake v. State,* Del.Super., 344 A.2d 260 (1975). Judge Longobardi stated:

"This Court would be constrained by logic and common sense from saying that those personal rights implicit in those cases [*Griswold, Roe* and *Stanley*] are the same or can be of the same order as the public sale of sex and the human body."

The District of Columbia Court of Appeals held in two recent decisions that the right to privacy guaranteed by the Constitution was not violated by a solicitation statute which applied to a man soliciting a man for homosexual sodomy and to a man soliciting a woman. *United States v. Carson,* D.C.App., 319 A.2d 329 (1974); *United States v. Dumas,* D.C.App., 327 A.2d 826 (1974); See also *United States v. Moses,* D.C.App., 339 A.2d 46 (1973).

Relying on *Stanley v. Georgia,* supra, defendant asserts that the statutes in question violate the fundamental right to be free of unwarranted government intrusions into one's privacy. *Stanley* declared that the right to view obscene material in the privacy of one's house was protected by the First and Fourteenth Amendments. *Stan-*

---

1. 11 Del.C. § 1342—A person is guilty of prostitution when he engages or agrees or offers to engage in sexual conduct with another person in return for a fee.
11 Del.C. § 1343—A person is guilty of patronizing a prostitute when: (1) Pursuant to a prior agreement or understanding, he pays a fee to another person as compensation for that person's having engaged in sexual conduct with him; or (2) He pays or agrees to pay a fee to another person pursuant to an agreement or understanding that in return therefor that person or a third person will engage in sexual conduct with him; or (3) He solicits or requests another person to engage in sexual conduct with him in return for a fee.

*ley,* however, has since been narrowly interpreted. It does not protect one who sells obscene material through the mail, *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 21 L.Ed.2d 813 (1971), nor one who attempts to bring obscene material into the country for commercial purposes, *United States v. Thirty-Seven (37) Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), nor one who desires to exhibit obscene films in a public "adult" theater, *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Thus, the context in which a particular communication or activity takes place will determine the extent to which the State may constitutionally control that particular conduct. The more public the context, the more permissible the control. In *Paris Adult Theatre I,* the Court stated:

'Where communication of ideas, protected by the First Amendment, is not involved, or the particular privacy of the home protected by *Stanley,* or any of the other 'areas or zones' of constitutionally protected privacy, the mere fact that, as a consequence, some human 'utterances' or 'thoughts' may be incidentally affected does not bar the State from acting to protect legitimate state interests."

▪ There is no recognized fundamental right to engage in the practice of prostitution. Thus, the State need not show the presence of a compelling interest to justify the statute. The test of the constitutionality of an exercise of the police power is whether the end result and the method adopted bear a reasonable relation to the public health, safety, morals or general welfare. All doubts are resolved in favor of the challenged statute. *Opinion of the Justices,* Del.Supr., 243 A.2d 716 (1968). Thus, the basic question faced by this Court is whether the legislature could consider prostitution a possible danger to public health, morals or the general welfare. If so, the statute must be upheld. It is of no legal moment whether or not the Court believes that the legislature chose the best method

to protect the State's interests, as long as the method chosen is rational.

▪ Defendant urges that the statute lacks any rational basis. He points to the pervasive influence of sex on American society, from the wide use of sexual stimulation in commercial advertisements to the popularity of magazines such as Playboy or films such as Deep Throat. He argues that such "sales of sex" are not illegal. He further notes that the State has decriminalized adultery and fornication. He contends that by allowing adultery, the State cannot justify its prostitution statute as a deterrent to extra-marital sex. Nevertheless, the State could, not unreasonably, conclude that allowing the public marketing of sex would produce a much greater strain upon the institution of marriage within its borders.

Defendant then suggests that it is irrational to penalize the prostitute for public soliciting since it is usually the customer who actually seeks out and solicits the prostitute by driving to an appropriate area. However, again it cannot be said that it would be unreasonable for the legislature to conclude that innocent citizens would, on occasion, be affronted by unwanted solicitation.

Defendant next argues that there is no reason to believe that disease is fostered by illicit commercial sex rather than through legal sexual contacts. However, the legislature could reasonably fear a higher incidence of disease since it is fair to assume that if prostitution were legalized the incidence of casual sexual contacts would greatly increase.

Defendant finally contends that prostitution itself does not necessarily lead to criminal activity, aggression, and violence. Such anti-social conduct, he suggests, is a product, rather, of the criminal milieu in which prostitution exists due to its illegality. However true this may be, the legislature could certainly conclude, within reason, that criminal manipulation would

continue to surround the activity of prostitution.

Even if none of the above conclusions could justify criminalization standing alone, taken together they are certainly enough to demonstrate a rational basis for the statute.

Although the purpose of the statute is legitimate, the question remains as to the constitutionality of the method used to achieve it. Here, defendant contends that the statutes, as applied, deny defendant his Fourteenth Amendment Equal Protection rights. Defendant claims that the State has violated the Equal Protection Clause by providing a stricter penalty for the "seller" than for the "buyer" in the prostitution exchange.[2]

The classic test for determining whether a state action is in violation of the Equal Protection Clause was formulated in *F. S. Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L. Ed. 989 (1920):

". . . [T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

Defendant contends that it is unreasonable to penalize the seller to a greater extent than the buyer in a prostitution exchange. Unlike other activities in which the seller is penalized more heavily than the buyer, he argues, only the factor of money in prostitution makes it illegal. In a drug sale, the drug itself is illegal. Thus, it makes more sense to penalize the seller who is providing a buyer with illegal material. In a sexual transaction, the act of sexual intercourse itself is not illegal as evidenced by the fact that fornication and adultery are no longer illegal. It is the

exchange of money attendant to the act which criminalizes it. Since both parties are equal participants, it is argued, the punishment should be equal.

Traditionally, Courts will not question the wisdom of legislation if there is any reasonable argument to sustain it. In *Railway Express Agency v. People of State of New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949), the United States Supreme Court refused to question the wisdom behind a New York City traffic regulation which prohibited advertisements on the side of motor vehicles except for business vehicles which advertised their own business. The rationale for the statute was that advertising on vehicles was distracting to drivers and pedestrians. It had been argued that all advertising was equally distracting regardless of who owned the truck upon which it appeared. However, the Court nevertheless concluded that the statute was not a violation of the Equal Protection Clause. Justice Douglas for the Court stated:

"The local authorities may well have concluded that those who advertised their own wares on their trucks do not present the same traffic problem in view of the nature or extent of the advertising which they use. It would take a degree of omniscience which we lack to say that such is not the case. If that judgment is correct, the advertising displays that are exempt have less incidence on traffic than those of appellants.

We cannot say that that judgment is not an allowable one. Yet if it is, the classification has relation to the purpose for which it is made and does not contain the kind of discrimination against which the Equal Protection Clause affords protection. *It is by such practical considerations based on experience rather than by theoretical inconsistencies that*

---

2. Prostitution is a Class B misdemeanor under 11 Del.C. § 1342, and is punishable by up to six months imprisonment, by a fine of up to $500, or both. Patronizing a prostitute, 11 Del.C. § 1343, is a violation. No jail sentence can be imposed and the fine is $250 for the first offense and $500 for subsequent conviction.

*the question of equal protection is to be answered. . . . It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."* (Emphasis supplied).

In *Blake v. State,* supra, it was stated that "there is a legitimate and reasonable basis to conclude that curtailment of the seller's activities will reduce the incidence of criminal activity in a multi-party, sequentially related crime situation." In general, the government's decision to regulate the seller and not the buyer is considered rational, even though it is frequently obvious that it is not the only available technique for deterring an activity.[3]

A further justification for penalizing more harshly one of two apparently co-equal contributors to a societal danger was stated by Justice Jackson, concurring in *Railway Express Agency v. People of State of New York,* supra:

"The question in my mind comes to this. Where individuals contribute to an evil or danger in the same way and to the same degree, may those who do so for hire be prohibited, while those who do so for their own . . . ends but not for hire be allowed to continue? I think the answer has to be that the hireling may be put in a class by himself and may be dealt with differently than those who act on their own. But this is not merely because such a discrimination will enable the lawmaker to diminish the evil. That might be done by many classifications, which I should think wholly unsustainable.

It is rather because there is a real difference between doing in self-interest and doing for hire, so that it is one thing to tolerate action from those who act on their own and it is another thing to permit the same action to be promoted for a price."

■ The State could reasonably conclude that a woman or man who performs sexual conduct for money is a greater danger to society than a woman or man performing the same act free of charge. The person charging a fee, characterized by Justice Jackson as a "hireling", can reasonably be viewed as being more likely to engage in sexual activity less responsibly or discriminately, since his or her primary motivation is the acquisition of money.

■ While the statutes involved apply equally to both men and women, it is argued that the statutes discriminate against women as applied. Even granting that such a discrimination is evident, the statute would quite probably survive, since sex has not been deemed a "suspect classification" calling for a "strict scrutiny" analysis. *M v. M,* Del.Supr., 321 A.2d 115 (1974). Here, however, there is no evidence before the Court that women have been prejudiced by an unequal enforcement of the law. One who challenges the constitutionality of a statute has the burden of overcoming the presumption of its validity. *Justice v. Gatchell,* Del.Supr., 325 A.2d 97 (1974); *State v. Brown,* Del.Supr., 195 A.2d 379 (1963). That burden has not been met.

For the reasons herein set forth, the Court concludes that defendant's motion should be denied.

IT IS SO ORDERED.

---

3. In the Soviet Union, prostitution is "successfully" deterred by posting publicly the names, addresses and places of employment of the customers of prostitutes. L. Kranowitz, Women and the Law, (1969).