OPINION OF THE COURT
Gerald Adler, J.
Petitioners, a prostitute (Margo St. James) and a patron (Fred Cherry) seek a judgment declaring Penal Law §§ 230.00 and 230.03 unconstitutional. These statutes prohibit prostitution and patronizing a prostitute.
This action was commenced on June 20, 1984. Respondents Koch and Ward moved to dismiss on the ground that petitioners lacked standing. Respondent Holtzman moved to dismiss on the same ground and also that the complaint failed to state a cause of action. On October 22, 1984, the complaint was dismissed by Justice Hirsch for failure to state a cause of action with leave to replead. On November 5, 1984, petitioner filed an amended complaint and all the respondents moved to dismiss on the same grounds alleged by Holtzman after the first complaint was filed. On December 30, 1984, petitioners filed a cross motion for summary judgment. Before deciding these motions, the court must first determine whether any of the prior rulings in Justice Hirsch’s decision are "Law of the Case”.
In Fioranelli v News Bldg. Corp. (102 Misc 2d 825, 827) the court stated: "The 'Law of the Case’ doctrine is a kind of intra-action res judicata. Within the framework of a single action it prevents relitigation of a point already adjudicated in it.” The doctrine is limited to questions of law and is frequently applied as a matter of judicial discretion (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.09, at 50-76; see also, Matter of McGrath v Gold, 36 NY2d 406; Fadden v Cambridge Mut. Fire Ins. Co., 51 Misc 2d 858, affd 27 AD2d 487; Siegel, NY Prac § 448 [Law of the Case], at 593-595; 1 Carmody-Wait 2d, NY Prac § 2:64, at 76-78; 21 CJS, Courts, § 195, at 330-334).[1] The purposes behind this rule are varied but include judicial economy, comity (Walker v Gerli, 257 App Div 249) and avoidance of judge shopping (Kerekes v Greenwood Props., 18 Misc 2d 84). These interests must be balanced against other *348 policies and the interest in equal justice (Matter of Shapiro v Ehrenpreis, 108 Misc 2d 495, 498). Thus, while it is often stated that if a judge’s decision on a point of law is clear, such decision is binding on another judge of coordinate jurisdiction, this rule is not absolute and has limits (5 Weinstein-KornMiller, NY Civ Prac ¶ 5011.09, at 50-76). These limits are usually expressed in terms of exceptions to the rule and judicial discretion in application. Thus, where factors and circumstances vitiate the purpose behind the rule, there is little or no logic in following the "Law of the Case” (Foley v Roche, 86 AD2d 887). The rule has not been applied where the prior decision was not on the merits (Matter of Burke v Axelrod, 90 AD2d 577; Globe Indem. Co. v Franklin Paving Co., 77 AD2d 581); or the prior decision resulted from an ex parte application (People v Guerra, 65 NY2d 60, 63; People v Carson, 99 AD2d 664); or where new evidence is before the court (Holloway v Cha Cha Laundry, 97 AD2d 385, 386; Matter of Yeampierre v Gutman, 57 AD2d 898, 899); or if the previous decision was discretionary (People v Wright, 104 Misc 2d 911, 915); or there exists extraordinary circumstances (Foley v Roche, 86 AD2d 887, supra); or if the prior decision is patently erroneous (People v Negron, 105 Misc 2d 492, 493); or where application of the doctrine would be counterproductive (Wilson v McCarthy, 53 AD2d 860, 861); or where a prior decision was made solely on motion papers and thereafter a full plenary hearing is conducted (People v Mason, 97 Misc 2d 706, 712); or where a temporary order was issued (Haber v Haber, 20 AD2d 858).[2]
Additionally, it is well established that application of "Law of the Case” is a matter of judicial discretion and not a limitation on the court’s power (Messenger v Anderson, 225 US 436, 444; Matter of Silverberg v Dillon, 73 AD2d 838, Iv denied 50 NY2d 803; see also, People v Leone, 44 NY2d 315, 320, Fuchsberg, J., concurring opn; Matter of Rose, 109 Misc 2d 960, 966-967; Sommer v Lenoir/Hickory Knitting Mills, 126 Misc 2d 255, 258). "In the absence of statute the phrase, law of the case * * * merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power” (Messenger v Anderson, 225 US 436, 444, supra).[3] *349 Such power, however, should be used sparingly. In Matter of Wright v County of Monroe (45 AD2d 932), while conceding discretion exists in application of law of the case, the Appellate Division, Fourth Department, held it was an abuse of discretion for a successor judge to overrule the prior ruling of the judge he replaced. In support of such finding the court noted that an appeal was available if the parties disagreed with the retired judge’s ruling. Further, the court also noted that "a considerable period of time elapsed between the order and the expiration of the retiring Judge’s term without application to him for reargument.” (Matter of Wright v County of Monroe, 45 AD2d 932, supra; see also, Parker v Rogerson, 33 AD2d 284, 290-291, appeal dismissed 26 NY2d 964.)
The "Law of the Case” doctrine applies to "various stages of the same action or proceeding” (Siegel, NY Prac § 448, at 593). It is thus important to determine if filing of the amended complaint constituted a new or the same action. In Kaplan v K Ginsburg, Inc. (14 Misc 2d 356, 358, mod 8 AD2d 726), the court stated: "It is well established that when an amended pleading is served, it takes the place of the original pleading and the action proceeds as though the original pleading had never been served. Such original pleading, under the circumstances, forms no part of the record and does not set forth issues which are involved”. In Mendez v Goroff (25 Misc 2d 1013, affd 13 AD2d 705, appeal withdrawn 12 NY2d 842), the court considered whether a prior determination by another judge of plaintiffs status as a licensee or invitee was binding on the court, where the original action had been dismissed for a failure to state a cause of action. The court said that an amended complaint: "must be considered de novo and the previous determination with respect to the plaintiffs status does not constitute the law of the case” (Mendez v Goroff, 25 Misc 2d 1013, 1014, supra; emphasis added). On the other hand in Kerekes v Greenwood Props. (18 Misc 2d 84, 85, supra), the court considered whether a prior determination by another justice on the issue of Statute of Limitations was the law of the case after the original complaint had been dismissed for failure to state a cause of action. Then Justice John F. Scileppi held that while law of the case was not applicable to the sufficiency of the amended complaint, it was applicable to the ruling concerning the alleged Statute of Limitations violation. "Otherwise, one Special Term would be placed in the anomalous position of reviewing the prior order of another Special Term. (Platt v. New York & Sea Beach Ry. Co., 170 *350 N. Y. 451, 458; Walker v. Gerli, 257 App. Div. 249, 251.)” (Kerekes v Greenwood Props., 18 Misc 2d 84, 85, supra.) In Matter of Town of Arietta v State Bd. of Equalization & Assessment (80 AD2d 956, 957-958, affd 56 NY2d 356), the Appellate Division, Third Department, applied the doctrine of law of the case to a ruling on justiciability that it had made 13 years earlier in a different but related action, on the basis that the different actions were essentially the same action.
This court believes that the doctrine of the law of the case is applicable to rulings made on the merits and unrelated to the pleadings. Such a rule prevents judge shopping and avoids relitigation of issues already decided. In the instant case, except for the sufficiency of the amended pleading, the action remains the same and even retains the same index number.
After careful analysis of the prior decision and application of the above criteria, this court finds the prior ruling that petitioners possess standing and present a justiciable controversy to be "Law of the Case”.[4] "Law of the Case” is not applicable, however, to the issue of whether a declaratory judgment is available in the instant case. Although such remedy was discussed in the prior ruling (within the context of standing and whether a justiciable controversy was presented), the propriety of a declaratory judgment in the instant case was never decided. In fact, leave to replead was specifically granted so that petitioners could amplify the factual basis for declaratory relief (see, J. Hirsch’s decision, Oct. 22, 1985).[5] Therefore, on these facts and in its discretion, the court will determine whether petitioners have presented the necessary requirements for a declaratory judgment.
An action for declaratory judgment will lie to test the constitutionality of a criminal statute (New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272; Porto v *351 Town/Village of Harrison, 100 AD2d 870) where prosecution is threatened (De Veau v Braisted, 5 AD2d 603; F.X. Maltz, Ltd. v Morgenthau, 556 F2d 123; Burmeister v New York City Police Dept., 275 F Supp 690), or irreparable injury will occur (Reed v Littleton, 275 NY 150; Snap N’ Pops v Dillon, 66 AD2d 219), and there must be no disputed facts (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 150-152), leaving only a sole question of law (Reed v Littleton, 275 NY 150, supra). Although there may be no present disputed facts, if there is a possibility of disputed facts arising in the future or a different interpretation of the future facts, a declaratory judgment will not be available (Zemel v Rusk, 381 US 1; New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272, 276, supra; Guide Escort Serv. v Moss, 176 Misc 66, affd 260 App Div 920, Iv denied 285 NY 857; Schwartz v O’Connell, 124 NYS2d 397 [Sup Ct, NY County]; F.X. Maltz, Ltd. v Morgenthau, 556 F2d 123, supra). To render a declaratory judgment involving disputed facts will not settle all issues or finally dispose of the controversy (Travelers Indem. Co. v Burg, 253 App Div 43; Framer v McCarthy, 205 Misc 921). Such a declaration would merely be advisory which is prohibited by the State Constitution since it is a nonjudicial function (Matter of State Fund of Death Benefits, 224 NY 13, 16).
In the instant case, petitioners have not presented the court with either a sole question of law or undisputed set of facts. The court may gratuitously accept the petitioners’ account of what had occurred. There is no proof that they will continue to act within the same factual parameter. There is a present claim and it may differ from their future activities. A declaratory judgment will not be granted where "each or any of these gradations of fact or charge would make a difference as to criminal liability” of the complainant (Zemel v Rusk, 381 US 1, 20, supra).
Moreover, petitioners have not been threatened with prosecution (De Veau v Braisted, 5 AD2d 603, supra). They have never been arrested nor are they in imminent danger of being arrested (Vanilla v Moran, 188 Misc 325, affd 272 App Div 859, affd 298 NY 796; Fenster v Leary, 20 NY2d 309). The fact that they wish to engage in proscribed criminal activity does not present the threatened prosecution necessary for a declaratory judgment. Petitioners may commit these acts for an extended duration of time and never be prosecuted. Indeed, petitioner Cherry claims he had been performing these acts in New York for at least 14 years and he has never been *352 prosecuted. "Declaratory judgments are intended to deal with actual problems and not [a] remote possibility that] may never [occur]” (Fellenz v Schaefer, 229 NYS2d 144, 147 [Sup Ct, Nassau County]).
Petitioners also do not allege any irreparable injury, past or future. Although they may be subject to some economic loss or an eventual arrest, these are not the "ills” a declaratory judgment is intended to prevent. "No doubt criminal prosecutions are always annoying and may disarrange the defendants’ income [or] finances but never yet has this been sufficient to change the usual and customary course of prosecution [of a] crime” (Reed v Littleton, 275 NY 150, 157, supra).
In addition, the court’s jurisdiction to render a declaratory judgment is discretionary (24 Carmody-Wait 2d, NY Prac § 147:5, at 389). Thus, even if declaratory judgment were proper, the court is not mandated to render such judgment. In the instant case, the petitioners are in the same position as every criminal currently contemplating criminal activity. To hold that each of these individuals can avail themselves of a declaratory judgment regarding their future criminal activity would be onerous, burdensome and remove from the criminal court the power to decide the criminal constitutionality of a criminal statute (see, 10 ALR3d 727).
Petitioners have not presented the necessary requirements for a declaratory judgment action.
However, since this matter presents a question of importance to the workings of the criminal justice system, and this is a recurring problem, the court feels obligated to express its view on the merits (see, Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 436-437; People v Parker, 41 NY2d 21, 25).
Petitioners contend that Penal Law §§ 230.00 (prostitution) and 230.03 (patronizing a prostitute in the fourth degree) violate their rights to due process and equal protection under the United States and New York Constitutions.
Penal Law § 230.00 reads as follows: "A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.”
Penal Law § 230.03 reads as follows: "A person is guilty of patronizing a prostitute in the fourth degree when he patronizes a prostitute.”
Petitioners contend in particular that these two Penal Law *353 sections (1) violate their right of privacy; (2) violate due process, and (3) deny them equal protection of the law.
In passing on the constitutionality of a statute, a presumption exists "that the Legislature has investigated and found the existence of a situation which indicates the particular legislation is needed, or is in fact desirable ([Maresca v Cuomo, 64 NY2d 242] East N. Y. Sav. Bank v Hahn, 293 NY 622, affd 326 US 230; Matter of Van Berkel v Power, 16 NY2d 37)” (People v Guilbert, 122 Misc 2d 694, 695; see also, State v Allen, 37 Conn S 506, 424 A2d 651, 652; State v Hicks, 360 A2d 150, 153, affd 373 A2d 205 [Del]). "[I]n order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40.)” (People v Pagnotta, 25 NY2d 333, 337.)
Prior to September 1, 1967, prostitution was not an offense in itself but a form of vagrancy (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 230.00, p 168; see also, Code Crim Pro § 887 [4], repealed Sept. 1, 1967). The revised Penal Law (eff Sept. 1, 1967) reorganized and modernized penal provisions proscribing conduct which had traditionally been considered criminal in Anglo-Saxon jurisprudence (1965 McKinney’s Session Laws of NY, Governor’s memoranda, at 2120; see also, People v Freaney, 108 AD2d 228). Included in this conduct has been prostitution or commercial sex (People v Bailey, 105 Misc 2d 772, 773, revd on other grounds 108 Misc 2d 1075; 63A Am Jur 2d, Prostitution, § 3, at 343; People v Fegelli, 163 App Div 576; People v Odierno, 166 Misc 108). Because of the difficulty of catching prostitutes actually performing the sex act, legislation has also been directed at those acts or conduct which precede or lead up to the actual sexual conduct (see, People v Bailey, 105 Misc 2d 772, revd on other grounds 108 Misc 2d 1075, supra; cf. People v Uplinger, 58 NY2d 936; 63A Am Jur 2d, Prostitution, § 3, at 343). With these principles in mind the court will now address petitioner’s contentions seriatim.
RIGHT TO PRIVACY
Although the right to privacy is not explicitly mentioned in either the United States or the New York Constitutions, the Supreme Court of the United States and our Court of Appeals have recognized such a right in various factual and legal settings (see, Griswold v Connecticut, 381 US 479 [contracep *354 tion, married persons]; Stanley v Georgia, 394 US 557 [obscene films in home]; Eisenstadt v Baird, 405 US 438 [contraception, unmarried persons]; Roe v Wade, 410 US 113 [abortion]; Skinner v Oklahoma, 316 US 535 [procreation]; Loving v Virginia, 388 US 1 [interracial marriage]; People v Onofre, 51 NY2d 476 [consensual sodomy by adults in a noncommercial private setting]; People v Rice, 41 NY2d 1018 [freedom of conduct]). The right of privacy "is a right of independence in making certain kinds of important decisions * * * undeterred by government restraint” (People v Onofre, supra, p 485; Whalen v Roe, 429 US 589, 599-600). Like most rights it is not absolute and government intrusion is permissible in appropriate circumstances (see, Carey v Population Servs. Intl., 431 US 678, 684, 685, 686; Matter of Dora P., 68 AD2d 719, 730-731).
In Paris Adult Theatre I v Slaton (413 US 49, 65), the court held that this "right to privacy guaranteed by the Fourteenth Amendment included 'only personal rights that can be deemed "fundamental” or "implicit in the concept of ordered liberty.” Palko v. Connecticut, 302 U.S. 319 * * * (1937).’ ” Further, "whether an individual has a constitutionally protected right to privacy depends on both the conduct at issue and the place where that conduct occurs” (Lutz v United States, 434 A2d 442, 445 [DC App]). For example, some conduct is protected under the zone of privacy even when it occurs in semipublic places: "[T]he constitutionally protected privacy of family, marriage, motherhood, procreation, and child rearing is not just concerned with a particular place, but with a protected intimate relationship. Such protected privacy extends to the doctor’s office, the hospital, the hotel room, or as otherwise required to safeguard the right to intimacy involved” (Paris Adult Theatre I v Slaton, 413 US 49, 66, n 13, supra). Other conduct, however, such as prostitutes plying their trade on a public street bear no legitimate expectation of privacy (Matter of Dora P., 68 AD2d 719, 731, supra; State v Allen, 37 Conn S 506, 424 A2d 651, supra; Tisdale v State, 640 SW2d 409 [Tex]). In Lutz v United States (434 A2d 442, 445, supra), the District of Columbia Court of Appeals held that even in a private setting "there is no fundamental right to privacy for commercial sexual solicitation” (same effect, Commonwealth v Walter, 338 Mass 460, 446 NE2d 707, 710; Commonwealth v King, 374 Mass 5, 372 NE2d 196, 203; J.B.K., Inc. v Caron, 600 F2d 710, 711, cert denied 444 US 1016; State v Mueller, 66 Hawaii 671, 671 P2d 1351, 1359; Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143; *355 State v Eighth Judicial Dist. Ct., 99 Nev 614, 668 P2d 282, 283; Stratton v Drumm, 445 F Supp 1305, 1309 [US Dist Ct, Conn]; State v Price, 237 NW2d 813, 818 [Iowa]).
In New York, decisions voluntarily made by adults regarding indulgence in acts of sexual intimacy by unmarried persons are protected under the cloak of the right to privacy only when they are made in a noncommercial private setting (People v Onofre, 51 NY2d 476, 485-488, supra). In Onofre the Court of Appeals held that a section of the New York Penal Law (Penal Law § 130.38 [consensual sodomy]) violated defendant’s right to privacy because it was broad enough to reach noncommercial cloistered personal sexual conduct of consenting adults (People v Onofre, 51 NY2d 476, 485, supra). In declaring the government intrusion unwarranted, the Court of Appeals repeatedly emphasized the lack of a commercial component and recognized the evils commonly attached to the retailing of sexual pleasures (People v Onofre, 51 NY2d 476, 485, 488, 490, supra; see also, Stanley v Georgia, 394 US 557, supra; People v Fegelli, 163 App Div 576, supra; People v Odierno, 16 Misc 108, supra). In People ex rel. Arcara v Cloud Books (65 NY2d 324, 336), the Court of Appeals stated that "prostitution is criminal activity no matter where it occurs”. Thus, where commerce is involved, such as the payment of a fee, personal sexual activity whether done privately or publicly, does not come within the sphere of privacy recognized for other types of conduct. Therefore, petitioners’ arguments concerning a violation of their right to privacy are without merit.
DUE PROCESS
Petitioners contend that Penal Law §§ 230.00 and 230.03 are arbitrary and capricious in that they further no legitimate State purpose in regulating private sexual behavior between consenting adults, whether such behavior is characterized as commercial or recreational.
The US Constitution 14th Amendment forbids any State to deprive any person of life, liberty, or property without due process of law. When the interest sought to be protected from unwarranted governmental intrusion is fundamental, a heightened degree of protection has been invoked by the courts (Smith v Goguen, 415 US 566, 573; cf. Paul v Davis, 424 US 693, 713). Thus, the threshold question in any due process inquiry is whether or not the interest sought to be protected is *356 fundamental.[6] Fundamental rights are those explicitly guaranteed by the Constitution or implicit in the concept of ordered liberty (San Antonio School Dist. v Rodriguez, 411 US 1, 17; Palko v Connecticut, 302 US 319, 324-325). Where the right sought to be protected is fundamental, the questioned State legislation must serve a compelling State interest or the intrusion is unconstitutional (Skinner v Oklahoma, 316 US 535, supra; San Antonio School Dist. v Rodriguez, 411 US 1, 17, 31, 40, supra). Where the right sought to be protected is not fundamental, the questioned State legislation enjoys a strong presumption of regularity and need bear only a rational relationship to a legitimate State interest to be constitutional (Katzenbach v Morgan, 384 US 641, 656-658; Munn v Illinois, 94 US 113, 132).
Applying this criteria to the instant case this court holds that there is no recognized fundamental right to engage in commercial sex or prostitution (Matter of Dora P., 68 AD2d 719, 731, supra; see also, State v Hicks, 360 A2d 150, 152, affd 373 A2d 205 [Del], supra; Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143, supra; Lutz v United States, 434 A2d 442, 445 [DC App], supra). "Commercial sex does not concern an intimate relationship of the sort heretofore deemed worthy of constitutional protection” (Lutz v United States, 434 A2d 442, 445, supra). In the instant case, the proscribed activity is not sexual activity but the business of engaging in that activity for hire on a regular basis (People ex rel. Howey v Warden, 207 NY 354, 363, Bartlett, J., dissenting opn; People v Trinci, 7 AD2d 885, 886, cert denied 362 US 914). Both Penal Law §§ 230.00 and 230.03 proscribe sexual conduct with another person in return for a fee.[7] As commercial regulations, these statutes do not preclude any personal activity protected by the Constitution (see, Stanley v Georgia, 394 US 557, supra; Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143, 1149, supra). Having determined that no fundamental right is intruded upon, the State need only demonstrate a rational relationship exists between the statutes in *357 question and some legitimate State interest to sustain their constitutionality (Carey v Population Servs. Intl., 431 US 678, 688, n 5, supra).
It has long been recognized that commercial sex has many attendant evils (People v Onofre, 51 NY2d 476, 490, supra). " 'Prostitution is an important source of venereal disease * * * [Prostitution is a source of profit and power for criminal groups who commonly combine it with illicit trade in drugs and liquor, illegal gambling and even robbery and extortion. Prostitution is also a corrupt influence on government and law enforcement machinery. Its promoters are willing and able to pay for police protection; and unscrupulous officials and politicians find them an easy mark for extortion. Finally, some view prostitution as a significant factor in social disorganization, encouraging sex delinquency and undermining marriage, the home, and individual character’ A.L.I. Model Penal Code, § 207.12 Tent. Draft No. 9, Comment at 171 (1959) (footnotes omitted).” (Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143, 1149, supra.)
Additionally, commercial sex demeans and exploits women, particularly the young and uneducated who require protection of their interests (Commonwealth v King, 374 Mass 5, 372 NE2d 196, 201, n 5, supra). Another justification for this type of legislation is the need for "public order” (State v Mueller, 66 Hawaii 616, 629, n 8, 671 P2d 1351, 1359, n 8, supra; State v Forrest 439 So 2d 404, 409 [La]). "A large segment of society undoubtedly regards prostitution as immoral and degrading, and the self-destructive or debilitating nature of the practice, at least for the prostitute, is often given as a reason for outlawing it” (State v Mueller, 66 Hawaii 616, 629, 671 P2d 1351, 1360, supra).
Given the strong presumption of validity accorded legislative enactments and the evils normally associated with prostitution, it cannot be said that these enactments are irrational or bear no rational relationship to valid State interests (see, People v Pagnotta, 25 NY2d 333, 337, supra; Matter of Van Berkel v Power, 16 NY2d 37, 40, supra; Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143, 1150, supra). Moreover, "[tjhere is unquestionably a control in the States over the morals of their citizens [which] extends to making prostitution a crime” (Hoke v United States, 227 US 308, 321; People v Costello, 90 Misc 2d 431, 434).
Prostitution is big business for commercial gain and may be regulated under the police power of the State (People v Fegelli, *358 163 App Div 576, 578-580, supra; People v Draper, 169 App Div 479, 484; Matter of Dora P., 68 AD2d 719, 731, supra; Tisdale v State, 640 SW2d 409, 413, 414 [Tex], supra; State v Allen, 37 Conn S 506, 424 A2d 651, 654, supra; 63A Am Jur 2d, Prostitution, § 3, at 343). This court does not sit to legislate morality, that is within the province of the Legislature (see, People v Onofre, 51 NY2d 476, 488, n 3, supra; People v Costello, 90 Misc 2d 431, 434, supra; People v Johnson, 60 Ill App 3d 183, 376 NE2d 381, 386; State v Price, 237 NW2d 813, 818 [Iowa], supra). The narrow question before this court is whether Penal Law §§ 230.00 and 230.03 violate due process. This court holds that they do not.
EQUAL PROTECTION
Petitioners contend Penal Law §§ 230.00 and 230.03 deprive them of equal protection of the law because they are unconstitutionally underinclusive in that they burden them and not others similarly situated.
The US Constitution 14th Amendment and NY Constitution, art I, § 11 forbid the State to "deny to any person within its jurisdiction the equal protection of the laws” (see, Moore v East Cleveland, 431 US 494, 541, White, J., dissenting opn). Equal protection is not, however, violated by every State discrimination. When dealing with neither a fundamental right nor a suspect class, equal protection is not offended so long as the State action is rationally based (Dandridge v Williams, 397 US 471, 487; People v Castro, 119 Misc 2d 787, 792-793; Matter of Lief v Hynes, 98 Misc 2d 817, 820-821; see also, People v Liberta, 64 NY2d 152, 163; Maresca v Cuomo, 64 NY2d 242, 250, supra). Under this standard, if any conceivable state of facts will support a classification, said provision will not be held violative of the equal protection clause (Maresca v Cuomo, 64 NY2d 242, 250, supra). "[A] court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack (Weinberger v Salfi, 442 US 749, 780)” (Maresca v Cuomo, 64 NY2d 242, 251, supra).
Petitioners contend that if a husband who pays his wife a fee for sex is not guilty of violating the prostitution statutes, then equal protection is offended if unmarried persons who engage in sexual activity in exchange for a fee are guilty.[8]
*359 Undoubtedly, a marital exemption exists for the crime of prostitution (People v Block, 71 Misc 2d 714, 716, supra).[9] This exemption violates equal protection unless some ground of difference exists to rationally explain the different treatment (People v Liberta, 64 NY2d 152, 163, supra; People v Onofre, 51 NY2d 476, 491, cert denied 451 US 987, supra; Eisenstadt v Baird, 405 US 438, 447, supra).
Marriage is a fundamental right where freedom of personal choice is protected to a heightened degree (Loving v Virginia, 388 US 1, 12, supra; Zablocki v Redhail, 434 US 374; Griswold v Connecticut, 381 US 479, 486, supra; People v De Stefano, 121 Misc 2d 113, 121). As such, an expanded zone of privacy attaches to the marital relationship (Griswold v Connecticut, 381 US 479, 485, 486, supra). Thus, absent compelling State interests, interference by the State with the intimacies of the marriage relationship, including sex, would violate this right to privacy. It is this special status that provides a rational basis to discriminate between married and unmarried persons under the prostitution statutes.[10]
A review of the legislative objective surrounding the prostitution statutes discussed earlier indicate several other reasons for distinguishing sexual conduct between prostitutes and patrons from that of married couples. All of the attendant evils associated with commercial sex are simply not present when sexual conduct occurs between a married couple. Lacking is the indiscriminateness of multiple partners that can lead to outbreaks of venereal disease and social disorganization. Missing is the commercial aspect of sex for a fee, where organized crime combines its profit with other illegal activities while corrupting governmental office and exploiting young women (People v Freaney, 108 AD2d 228, supra; Commonwealth v Dodge, 287 Pa Super Ct 148, 429 A2d 1143, 1149, supra; Commonwealth v King, 374 Mass 5, 372 NE2d 196, 201, *360 n 5, supra). Finally, private sexual intimacy between a married couple poses no threat to the public order (see, State v Mueller, 66 Hawaii 616, 628, n 8, 671 P2d 1351, 1359, n 8, supra; State v Forrest, 439 So 2d 404, 409 [La], supra).
Accordingly, equal protection is not violated by the existence of the marital exemption (cf. People v Liberta, 64 NY2d 152, supra).
Petitioner Cherry also contends that these Penal Law sections deprive him of the right to engage in sexual conduct while granting the right to nonhandicapped people.[11] In support of such proposition, petitioner offers no evidence or proof that any discrimination of this nature exists. Nowhere in the face of the statutes does such discrimination appear. Conclusory allegations without more are insufficient to establish an equal protection violation (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 694). Therefore, the contention must also fail.
Finally, petitioner Cherry contends that Penal Law § 230.03 discriminates between those who keep "mistresses” and those who patronize prostitutes. Petitioner’s first shortcoming in this contention is that he offers no evidence or proof that the activity between "mistresses” and those who keep them is not criminal.[12] Secondly, even if discrimination exists between these classes, equal protection is not violated so long as some ground of difference exists to rationally explain the different treatment (People v Liberta, 64 NY2d 152, 163, supra).[13] Although the relationship between a mistress and lover does not rise to the lofty status given the marriage relationship, it *361 lacks most of the evils perceived by the Legislature as attendant to prostitution. It is certainly not connected with organized crime or a source of profit for use in combine with other illegal activities. It is, for the most part, neither indiscriminate nor commercial. It is usually conducted between singular, not multiple participants. Because of such singular participation, there exists no greatly increased risk that venereal disease will be propagated. Further, it is difficult to conceive of how a mistress relationship could constitute a threat to the public order. Given these distinctions, enforcement against mistress-type relationships of the challenged penal laws would not foster the legislative objectives of the prostitution statutes. Thus, rational reasons exist to explain a difference in treatment of these activities (Eisenstadt v Baird, 405 US 438, 447, supra; People v Liberta, 64 NY2d 152, 163, supra). For all of the above reasons, petitioner’s final contention must also fail.
In conclusion, the amended complaint is dismissed for failure to state a cause of action. Accordingly, Penal Law §§ 230.00 and 230.03 are declared constitutional. Petitioner’s cross motion for summary judgment is denied.

. Usually the issue is decided in a court order, but it need not be (George W. Collins, Inc. v Olsker-McLain Indus., 22 AD2d 485).

. This is so even if temporary findings were the product of a hearing rather than a set of motion papers (Bannon v Bannon, 270 NY 484).

. It should be noted that a motion for leave to renew or reargue a prior motion must usually be made to the judge that signed the order (see, CPLR 2221).

. It is well settled that a petitioner, who repleads after an order dismissing an action for failure to state a cause of action, must correct the defect or supply the omission determined to exist in the earlier complaint (175 E. 74th Corp. v Hartford Acc. & Indem. Co., 51 NY2d 585, 590, n 1). This was not done in the instant case. However, since respondents do not make this claim, the court need not consider such claim.

. In the prior decision, Justice Hirsch surmised that while public solicitation for purposes of prostitution was not protected under the Constitution, there may be a constitutional protection for the same type of act under private conditions. The prior decision did not reach that issue because the first complaint was not specific as to where and under what circumstances petitioners committed or intended to commit their prostitution activities.

. The court also notes heightened judicial scrutiny is applied when there is legislation affecting an inherently suspect classification (Loving v Virginia, 388 US 1, 18).

. "The fair import of the word 'fee’ then is payment in return for professional services rendered * * * 'Fee’ in section 230.00 of the Penal Law can fairly be said to connote professionalism. It restricts the purview of the statute. For example, it would eliminate the situation * * * of a wife who withholds the performance of her conjugal duties unless her husband gives her a mink coat” (People v Block, 71 Misc 2d 714, 716).

. For example, why should a wife’s withholding of sexual favors unless *359 her husband buys her a new dress be treated any differently from a patron buying his favorite prostitute a dress? (Tisdale v State, 640 SW2d 409, 414, n 2 [Tex].)

. In People v Block (71 Misc 2d 714, 716, supra), the court noted that "fee” in Penal Law § 230.00 is payment in return for professional services. Using this definition to restrict the purview of the statute the court rejected defendant’s suggestion that a wife who withholds the performance of her conjugal duties unless her husband gives her a mink coat is committing prostitution.

. The marriage relationship cannot, however, be employed as a shield when it is used to promote indiscriminate commercial sex. (People v Deckenbrock, 157 App Div 379, 380-383, affd 209 NY 604.)

. Petitioner alleges that he suffers from malabsorption syndrome (also known as celiac disease) which causes him emaciation and extreme fatigue. Petitioner further alleges that because of this condition, he has never developed a sexual relationship with a nonprostitute woman and has had to rely on prostitutes for sexual gratification.

. To the degree that petitioner relies on People ex rel. Colletti v Morehead (50 NYS2d 78), that case disproves his contentions. In Colletti (p 80), the court quoting from the People’s memorandum, apparently agreed that a keeper (Rubenstein) of two young women in a mistress-type relationship would have been found guilty if charged with promoting prostitution. It should be noted that Colletti was decided in 1944, long before the statutes being challenged were enacted.

. It is unclear, in the mistress situation, whether the giver of the "fee” does so as consideration for the sexual conduct or does so because of affection for the receiver. It is also unclear whether the receiver of the "fee” performs the sexual conduct because of the fee or because of affection for the giver. If either alternative is true, petitioner’s equal protection argument would fail, as neither would be guilty of any crime.